IN THE MATTER OF: MARIO LOPEZ STEDMAN

No. 35

(Filed 27 January 1982)

1. **Infants § 11— jurisdiction of juvenile delinquent—exclusive in district court**
    Under both the old juvenile code and under the new juvenile code, Articles 41 through 57 of Chapter 7A of the General Statutes, the district court had exclusive original jurisdiction over respondent who was 15 years 9 months and 17 days old when the offenses described in four juvenile petitions were committed. For purposes of determining jurisdiction, the age of the juvenile at the time of the alleged offenses governs, G.S. 7A-523, and once the district court obtains jurisdiction over a juvenile, that jurisdiction continues until terminated by order of the court or until the juvenile reaches his eighteenth birthday. G.S. 7A-524.

2. **Infants § 18— juvenile proceedings—nontestimonial indentification order— fingerprinting—admissibility**
    Where a juvenile was charged with kidnapping, armed robbery, first degree rape and felonious assault, two nontestimonial identification orders issued pursuant to G.S. 15A-502(c) and G.S. 7A-596 were in all respects lawful and valid as there was probable cause to believe that (1) the offenses described in the juvenile petitions had been committed and would be punishable by imprisonment for more than two years if committed by an adult, (2) there were reasonable grounds to suspect that respondent committed them, and (3) taking respondent's fingerprints would be of material aid in determining whether respondent committed the offenses described. The three requisites specified in G.S. 7A-598 were thus satisfied.

**3. Criminal Law § 84; Infants § 18— fingerprints not tainted under "fruit of poisonous tree"**

Evidence of a juvenile's fingerprints which were taken pursuant to an order based on information obtained independently of an earlier unlawful fingerprinting was properly admissible and not tainted under the "fruit of the poisonous tree" doctrine. Further, the amendment of G.S. 15A-502(c) which allows fingerprinting of juveniles pursuant to G.S. 7A-596 constitutes a narrowing of an exclusionary rule of evidence, and the fact that G.S. 15A-502(c) was amended and G.S. 7A-596 was enacted after the alleged commission of the offenses set out in the juvenile petitions did not preclude the admission of fingerprints properly taken after the effective date of the amendment even though respondent's fingerprints could not legally have been taken at the time of the offense.

Justices Exum and Carlton concur in part and dissent in part.

On certiorari to review an order by *Allen (J. B., Jr.), J.,* entered 16 February 1981 in Alamance District Court, allowing respondent's motion to suppress fingerprint evidence and dismiss four juvenile petitions alleging the felonious offenses of kidnapping, rape, armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury.

Mario Lopez Stedman was born 16 February 1963 and was fifteen years, nine months and seventeen days of age on 3 December 1978, the date of the alleged offenses set forth in the juvenile petitions.

The four petitions alleged that Mario Lopez Stedman was a delinquent child as defined by G.S. 7A-278(2), now G.S. 7A-517(12), by reason of having committed the following offenses: (1) the kidnapping of Karen Farris on or about 3 December 1978, in violation of G.S. 14-39; (2) armed robbery of Karen Farris on the same day in violation of G.S. 14-87; (3) first degree rape of Karen Farris on the same day in violation of former G.S. 14-21; and (4) felonious assault on Karen Farris on the same day in violation of G.S. 14-32(a), by shooting her four times with a .25 caliber pistol with the intent to kill inflicting serious bodily injury.

The State's evidence at the hearing before Judge Allen tends to show the matters narrated in the following numbered paragraphs:

1. Karen Farris was a nineteen-year-old desk clerk at the Village Inn Motel in Graham, North Carolina. On 3 December

1978, she worked the second shift. At approximately 9 p.m. two black males entered the Village Inn Motel lobby, indicated they were having car trouble and asked to use the telephone. Don King, an employee at the motel, gave them a telephone number of a wrecker service to call for assistance. The two men left and returned at approximately 9:30 p.m. when Karen Farris was alone behind the counter in the motel lobby near the cash register. One of the men, whom she now recognizes as Kelvin Sellars, pointed a pistol at her and demanded the money from the cash register. At his direction she removed about $200 in cash and gave it to the robber. The other man picked up a grey metal box underneath the counter near the cash register, opened it but found nothing to take. This second man did not say anything and she did not see him touch anything except the metal box. Karen Farris has not been able to identify the second man, but described him as a tall, slender black male with short hair and medium skin color consistent with the appearance of Mario Lopez Stedman. She said he was "young, he was real jumpy and kind of hyperactive about the whole thing, he thought it was a game. He was right much younger than Sellars was."

2. When the robbers left, they forced Karen Farris to accompany them in their vehicle. They took her to a remote area of Alamance County about twelve miles from the Village Inn Motel, raped her, and shot her at close range with a .25 caliber pistol. After shooting her twice, the men started to leave but discovered she was still alive. As she begged for her life, they shot her twice more, once in the face. They left her for dead.

3. SBI Agent Sam Pennica went to the Village Inn Motel that evening and also drove to a location on a dirt road off Highway No. 62 approximately twelve miles from the Village Inn Motel. On that dirt road at the point indicated he found a small red wallet with identifiction bearing the name of Karen Farris and found certain other items, including a white slip and a bra. At the Village Inn Motel, Agent Pennica obtained latent fingerprint impressions from various areas of the lobby, counter and cash register. He took four latent fingerprint impressions from the above described grey metal box. Thereafter, SBI Agent Pennica located a 1963 blue Plymouth car parked in Yanceyville, North Carolina. Highway No. 62 runs directly into Yanceyville from the area of the rape scene. On 12 July 1979, Karen Farris identified

this 1963 Plymouth vehicle as the car in which she was raped. SBI Agent Pennica obtained eighteen latent fingerprint impressions from the vehicle and delivered them to SBI Agent Layton for comparison purposes.

4. On 6 August 1979, when Mario Lopez Stedman was sixteen years, five months and twenty-one days old, he was indicted in Alamance Superior Court for kidnapping, armed robbery, first degree rape and felonious assault of Karen Farris. Under those bills of indictment he was arrested on or about 14 September 1979 and fingerprinted pursuant to the procedures normally utilized for adults who are indicted by the grand jury.

5. On 30 October 1979, Judge Donald L. Smith, presiding over Alamance Superior Court, quashed the bills of indictment "for failure of the State to demonstrate that the superior court had proper jurisdiction over said offenses."

6. Stedman was detained under new juvenile petitions approved 30 October 1979 and filed 2 November 1979 alleging the same offenses contained in the bills of indictment. These juvenile petitions were dismissed by District Judge Thomas D. Cooper on 19 November 1979 upon a finding that the fingerprint evidence had been illegally obtained due to the fact that Stedman was fifteen years of age at the time the alleged crimes were committed. Therefore, due to Stedman's age, Judge Cooper found he was illegally fingerprinted pursuant to bills of indictment issuing out of the superior court "without fulfilling the requirements of [former] G.S. 7A-280 and G.S. 15A-502."

7. On 26 February 1980, Judge Thomas D. Cooper issued a nontestimonial identification order pursuant to G.S. 7A-596, which had been enacted as part of the North Carolina Juvenile Code effective 1 January 1980, requiring the fingerprinting and palm printing of Mario Lopez Stedman. When the order was served on Stedman, he fled the state and was eventually returned to North Carolina from Washington, D.C. on 14 January 1981 to show cause why he should not be held in contempt for failure to comply with Judge Cooper's order.

8. On 9 February 1981, Superior Court Judge McLelland issued a second nontestimonial identification order as authorized by G.S. 7A-596 and pursuant to that order the fingerprints of

Mario Lopez Stedman were taken on 12 February 1981 by SBI Agent Pennica in the presence of Stedman's attorney. These prints were delivered to SBI Agent Layton for comparison with the latent prints taken from the metal box at the Village Inn Motel and the latent prints taken from the 1963 Plymouth.

9. When SBI Agent Layton compared the latent fingerprints taken from the metal box and from the 1963 Plymouth automobile with the inked fingerprint impressions of Mario Lopez Stedman taken by SBI Agent Pennica pursuant to the non-testimonial identification order of Judge McLelland, it was the opinion of Agent Layton that one of the prints lifted from the metal box was the right thumbprint of Stedman and that six of the prints lifted from the 1963 Plymouth were prints of Mario Lopez Stedman.

The four juvenile petitions were refiled and came on for hearing before Judge Allen at the 16 February 1981 Juvenile Session of Alamance District Court. The State requested that the proceedings be treated as a probable cause hearing on the felony petitions and that Mario Lopez Stedman be bound over, i.e., that the charges be transferred, to the Superior Court of Alamance for trial as in case of adults.

Stedman objected to the admission of the latent fingerprint impressions lifted from the grey metal box at the scene of the crime and lifted from the 1963 Plymouth and the comparison of same with his inked fingerprints taken by authority of the nontestimonial identification order issued by Judge McLelland on 9 February 1981. The motion to suppress such evidence was allowed. Judge Allen thereupon dismissed the petitions on the ground that the remainder of the evidence offered by the State was insufficient to support a finding of probable cause or to permit the charges to be transferred to the superior court for disposition as in case of adults. The State gave notice of appeal in open court and later petitioned this Court for certiorari to review that order. We allowed the petition, thus bypassing the Court of Appeals. The questions involved are now before this Court for initial appellate review.

*Rufus L. Edmisten, Attorney General, by Donald W. Stephens, Assistant Attorney General, for the State, petitioner appellant.*

*Donnell S. Kelly, attorney for Mario Lopez Stedman, respondent appellee.*

HUSKINS, Justice.

[1] On 3 December 1978 when the offenses described in the four juvenile petitions were committed, Mario Lopez Stedman was fifteen years, nine months and seventeen days old, and Article 23 of Chapter 7A of the General Statutes (G.S. 7A-277 through 7A-289), as contained in Volume 1B (replacement 1969) was in effect.

Effective 1 January 1980, Article 23 of Chapter 7A of the General Statutes (G.S. 7A-277 through 7A-289) was repealed by 1979 Session Laws, Chapter 815, section 1, and the North Carolina Juvenile Code, which includes Articles 41 through 57 of Chapter 7A of the General Statutes (Volume 1B, replacement 1981), was enacted in lieu thereof.

Former G.S. 7A-279 reads in pertinent part as follows:

The court shall have exclusive, original jurisdiction over any case involving a child . . . who is alleged to be delinquent, . . . except as otherwise provided. This jurisdiction shall be exercised solely by the district judge.

Former G.S. 7A-280 reads in pertinent part as follows:

*Felony cases.* — If a child who has reached his fourteenth birthday is alleged to have committed an offense which constitutes a felony, the judge shall conduct a preliminary hearing to determine probable cause after notice to the parties as provided by this article. Such hearing shall provide due process of law and fair treatment to the child, including the right to counsel, privately retained or at State expense if indigent.

If the judge finds probable cause, he may proceed to hear the case under the procedures established by this article, or if the judge finds that the needs of the child or the best interest of the State will be served, the judge may transfer the case to the superior court division for trial as in

the case of adults. The child's attorney shall have a right to examine any court or probation records considered by the court in exercising its discretion to transfer the case, and the order of transfer shall specify the reasons for transfer.

If the alleged felony constitutes a capital offense and the judge finds probable cause, the judge shall transfer the case to the superior court division for trial as in the case of adults.

Likewise, the new Juvenile Code gives the district court exclusive original jurisdiction over any case involving a juvenile alleged to be delinquent. For purposes of determining jurisdiction, the age of the juvenile at the time of the alleged offense governs. G.S. 7A-523. Once the district court obtains jurisdiction over a juvenile, that jurisdiction continues until terminated by order of the court or *until the juvenile reaches his eighteenth birthday.* G.S. 7A-524.

Thus, under both the old law and the new, it is clear that on 3 December 1978 the district court had exclusive original jurisdiction over the cases involving Mario Lopez Stedman. Since the cases had not been transferred to the superior court for trial as in case of adults, the bills of indictment returned by the Alamance Grand Jury on 6 August 1979 were void for lack of jurisdiction; and Judge Donald L. Smith, presiding over Alamance Superior Court, properly quashed the bills of indictment on 30 October 1979.

[2]   We note at this point that G.S. 15A-502, as written and in effect on 3 December 1978, read in pertinent part as follows:

(a) A person charged with the commission of a felony or a misdemeanor may be photographed and his fingerprints may be taken for law-enforcement records only when he has been:

(1) Arrested or committed to a detention facility, or

(2) Committed to imprisonment upon conviction of a crime, or

(3) Convicted of a felony.

(b) This section does not authorize the taking of photographs or fingerprints when the offense charged is a

misdemeanor under Chapter 20 of the General Statutes, 'Motor Vehicles,' for which the penalty authorized does not exceed a fine of five hundred dollars ($500.00), imprisonment for six months, or both.

(c) *This section does not authorize the taking of photographs or fingerprints of a 'child' as defined for the purposes of G.S. 7A-278(2), unless the case has been transferred to the superior court division pursuant to G.S. 7A-280.* [Emphasis added.]

(d) This section does not prevent the taking of photographs, moving pictures, video or sound recordings, fingerprints, or the like to show a condition of intoxication or for other evidentiary use.

(e) Fingerprints or photographs taken pursuant to subsection (a) may be forwarded to the State Bureau of Investigation, the Federal Bureau of Investigation, or other law-enforcement agencies.

Effective 8 June 1979 the General Assembly amended G.S. 15A-502(c) above quoted to read as follows: "This section does not authorize the taking of photographs or fingerprints of a juvenile except under G.S. 7A-596 through 7A-627." *See* Chapter 850 of the 1979 Session Laws.

G.S. 7A-596 provides in pertinent part:

Nontestimonial identification procedures shall not be conducted on any juvenile without a court order issued pursuant to this Article unless the juvenile has been transferred to superior court for trial as an adult in which case procedures applicable to adults as set out in Articles 14 and 23 of Chapter 15A shall apply. A nontestimonial identification order authorized by this Article may be issued by any judge of the district court or of the superior court upon request of a prosecutor. As used in this Article, 'nontestimonial identification' means identification by fingerprints, palm prints, footprints, measurements, blood specimens, urine specimens, saliva samples, hair samples, or other reasonable physical examination, handwriting exemplars, voice samples, photographs, and lineups or similar identification procedures requiring the presence of a juvenile.

A request for such nontestimonial identification order may be made before or after a juvenile is taken into custody and prior to the adjudicatory hearing. G.S. 7A-597.

A nontestimonial identification order may issue only upon sworn affidavit or affidavits establishing the following grounds: (1) that there is probable cause to believe that an offense has been committed which if committed by an adult would be punishable by imprisonment for more than two years; and (2) that there are reasonable grounds to suspect that the juvenile named or described in the affidavit committed the offense; and (3) that the results of specific nontestimonial identification procedures will be of material aid in determining whether the juvenile named in the affidavit committed the offense. G.S. 7A-598. When it is shown that the specified grounds exist the judge may issue the order following the same procedure as in case of adults. G.S. 7A-599. After a notice and hearing, if the court finds probable cause, it may transfer jurisdiction over a juvenile fourteen years of age or older to superior court if the juvenile was fourteen years of age or older at the time he allegedly committed an offense which would be a felony if committed by an adult. G.S. 7A-608.

We note parenthetically that a juvenile may request that nontestimonial identification procedures be conducted upon himself. If it appears that the results of such procedures will be of material aid to the juvenile's defense, the judge to whom the request is directed must order the State to conduct the identification procedures. *See* G.S. 7A-600.

It now becomes our duty to apply the foregoing legal principles to the facts in the case before us.

G.S. 15A-502(c) as amended by Chapter 850 of the 1979 Session Laws, effective 8 June 1979, permits the taking of fingerprints of a juvenile under G.S. 7A-596 through 7A-627. The procedure for fingerprinting a juvenile is thereby changed. Such fingerprinting is specifically authorized before the case is transferred to the superior court when a district or superior court judge issues a nontestimonial identification order upon sworn affidavits which establish the three grounds enumerated in G.S. 7A-598.

We hold that the requisites of G.S. 7A-598 were satisfied as a result of the affidavit of SBI Agent Pennica establishing the following:

1. On 3 December 1978 between 9 and 10 p.m., two black males entered the office of the Village Inn Motel, robbed Karen Farris at gunpoint, abducted her, took her fourteen and one-half miles north of Graham off Highway 62, raped her, shot her four times with a .25 caliber pistol, and left her for dead.

2. The two black males were driving a 1963 light blue Plymouth which the victim had positively identified as the automobile in which she was raped.

3. Miss Farris had described both black males and Mario Lopez Stedman fit the description of one of them.

4. Kelvin Wendell Sellars was positively identified as one of the black males who committed the offenses upon her.

5. Kelvin Wendell Sellars had testified under oath at his own trial that at 7:15 p.m. on the night of 3 December 1978 he allowed Mario Stedman and another black male to use the 1963 light blue Plymouth. Stedman returned the vehicle late in the evening of 3 December 1978, was in possession of it and had exclusive custody and control over it during the time the crimes were allegedly committed.

6. During the Sellars trial a witness named John Wiley had testified that he was present when Sellars allowed Mario Lopez Stedman and another black male to use the 1963 blue Plymouth. The vehicle was taken by Stedman around 7 p.m. and returned while Wiley was in the presence of Sellars that same evening about 10 p.m.

7. The affiant had been told by a girl named Debra Arnette Gwyn that she had taken Mario and DeCarlo Stedman to the bus station in Danville, Virginia to get a bus to New Jersey on 11 December 1978, the day after Sellars had been arrested. Miss Gwyn stated she heard Mario tell DeCarlo they needed money to get away and that she herself gave them $76. Miss Gwyn had further stated that she saw Mario with a small handgun at his residence on 11 December 1978 at which time Mario stated that "if the law came to his house he was going to shoot them."

8. The affiant had heard Karen Farris state under oath during a hearing in juvenile court that Mario Stedman resembled one of the men who attacked her on the night of 3 December 1978, but she was not positively sure that Stedman was one of the men; she was positive about the other man.

9. During the investigation of these offenses, officers took latent fingerprint impressions from the 1963 blue Plymouth and from the metal cash box located under the counter near the cash register at the Village Inn Motel where it is likely the perpetrators of these crimes left fingerprint impressions.

The affidavit before Judge McLelland was clearly sufficient to establish probable cause to believe that the offenses described in the juvenile petitions had been committed and would be punishable by imprisonment for more than two years if committed by an adult; that there were reasonable grounds to suspect that Mario Lopez Stedman committed them; and that taking Stedman's fingerprints would be of material aid in determining whether Stedman committed the offenses described. The three requisites specified in G.S. 7A-598 were thus satisfied.

As a matter of law, upon the establishment of the grounds enumerated in G.S. 7A-598, the nontestimonial identification order issued by Judge Cooper on 26 February 1980 pursuant to G.S. 15A-502(c) and G.S. 7A-596 was in all respects valid. Likewise, the nontestimonial identification order issued by Judge McLelland on 9 February 1981 was in all respects lawful. Therefore, the fingerprints of Mario Lopez Stedman taken pursuant to the latter order were legally obtained. Evidence of the fingerprints of Stedman taken on 12 February 1981 and the comparison of these prints with the latent fingerprints taken from the metal box at the crime scene and from the 1963 Plymouth automobile was competent and should have been considered at the 16 February 1981 hearing.

[3] Judge Allen suppressed such evidence on the ground that, since Stedman's fingerprints had been unlawfully obtained initially, these lawfully obtained fingerprints were tainted under the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407 (1963). That doctrine, firmly rooted in the principle of the "exclusionary rule" prohibiting admission of evidence obtained by unlawful or

improper activity by the government, forbids the use of any evidence whose genesis can be traced directly or indirectly to an original invalid search or other illegal action by authorities. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920). Not only the evidence initially wrongfully obtained, but its fruits — evidence resulting from the original wrongdoing — must be suppressed. *Alderman v. United States*, 394 U.S. 165, 22 L.Ed. 2d 176, 89 S.Ct. 961 (1969).

A prominent exception to the "fruit of the poisonous tree" doctrine is the "independent discovery" rule. If the evidence would likely have been discovered or obtained by valid means independent of the wrongdoing, the evidence is not inadmissible, even though under the particular circumstances it first came to authorities' attention as a result of some wrongful governmental activity. *Nardone v. United States*, 308 U.S. 338, 84 L.Ed. 307, 60 S.Ct. 266 (1939).

Stedman's fingerprints were taken pursuant to an order based on information obtained independently of, and not tainted by, the fact that Stedman was unlawfully fingerprinted on or about 14 September 1979 following his arrest under invalid bills of indictment. *See United States v. Crews*, 445 U.S. 463, 474-77, 63 L.Ed. 2d 537, 548-49, 100 S.Ct. 1244, 1251-53 (1980). The order was issued solely upon SBI Agent Pennica's affidavit which did not mention any previous fingerprinting of Stedman. The record does not indicate whether these earlier fingerprints were ever compared with the latent prints taken from the grey metal box and the 1963 Plymouth. Assuming, *arguendo*, that the prints matched and this evidence played a role in the State's determination to seek the nontestimonial identification order, the motivations of the prosecution are not germane to our inquiry. The question before us is whether the evidence the State presented to Judge McLelland satisfied the requisites of G.S. 7A-598; speculation regarding the factors which prompted the State to seek the nontestimonial identification order is irrelevant. Judge Allen erred in suppressing the evidence as "fruit of the poisonous tree."

The fact that the fingerprints could not legally have been taken at the time of the offense does not preclude their admission in this case. The amendment of G.S. 15A-502(c) to allow fingerprinting of juveniles pursuant to G.S. 7A-596 constitutes a nar-

rowing of an exclusionary rule of evidence. The fact that G.S. 15A-502(c) was amended and G.S. 7A-596 was enacted after the alleged commission of the offenses set out in the juvenile petitions is of no consequence.

G.S. 15A-502(c) and G.S. 7A-596 are procedural statutes. A change in the evidentiary or procedural law between the time of the offense and the time of trial does not preclude the State from utilizing the new procedure even though at the time of the offense it was unavailable. *See Dobbert v. Florida,* 432 U.S. 282, 53 L.Ed. 2d 344, 97 S.Ct. 2290 (1977); *Beazell v. Ohio,* 269 U.S. 167, 70 L.Ed. 216, 46 S.Ct. 68 (1925); *Thompson v. Missouri,* 171 U.S. 380, 43 L.Ed. 204, 18 S.Ct. 922 (1898); *Hopt v. Utah,* 110 U.S. 574, 28 L.Ed. 262, 4 S.Ct. 202 (1884).

In *Beazell* the Court said:

> [T]here may be procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense, or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition [against *ex post facto* laws]. . . . [S]tatutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited.

269 U.S. at 170, 70 L.Ed. at 218, 46 S.Ct. at 69.

Applying these legal principles, we discern no unconstitutional *ex post facto* ramifications here. G.S. 7A-596, authorizing the fingerprinting of minors on a nontestimonial identification order, does not deprive Mario Lopez Stedman of any defense which was available to him under the laws in force on 3 December 1978. Furthermore, G.S. 7A-596 does not create an offense *ex post facto* by altering any element of the crimes charged or the quantum of proof required for a conviction. Therefore, application of the provisions of G.S. 7A-596 and 7A-598 does not offend Article I, section 16 of the North Carolina Constitution which forbids the enactment of any *ex post facto* law or a like prohibition found in Article I, section 10 of the United States Constitution.

For the reasons stated Judge Allen's order dated 16 February 1981 (and apparently signed by him on 25 February 1981) is vacated.

Moreover, Judge Allen's order must be vacated for the additional reason that the District Court of Alamance had no jurisdiction over Stedman at the time of the 16 February 1981 hearing. G.S. 7A-524 provides: "When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until he reaches his eighteenth birthday." Stedman reached his eighteenth birthday at 12:01 a.m. on 16 February 1981. The quoted statute terminated the jurisdiction of the juvenile court over the juvenile and the subject matter of the juvenile petitions at that time.

Ordinarily this matter would be remanded to the District Court of Alamance for further proceedings in accordance with this opinion. However, since that court is now *functus officio* for lack of jurisdiction, Stedman may now be tried in Superior Court of Alamance the same as any other adult. No adjudicatory or dispositional hearing has been conducted in juvenile court. The district court has never decided whether Stedman was guilty of the offenses alleged in the petitions. In fact, the juvenile court has conducted a probable cause hearing only, and a probable cause hearing does not suffice to place the juvenile in jeopardy. It may not be equated with an adjudicatory hearing where jeopardy attaches when the judge begins to hear evidence. G.S. 7A-612; *In re Bullard*, 22 N.C. App. 245, 206 S.E. 2d 305, *appeal dismissed*, 285 N.C. 758, 209 S.E. 2d 279 (1974). *Compare State v. Neas*, 278 N.C. 506, 180 S.E. 2d 12 (1971).

Order vacated.

Remanded for trial as in case of adults.

Justices EXUM and CARLTON concur in part and dissent in part. They vote to remand to District Court of Alamance County for further proceedings in accordance with the opinion.