STATE OF NORTH CAROLINA v. TERRY WAYNE NORRIS

No. 8429SC1297

(Filed 29 October 1985)

**Infants § 17; Criminal Law § 66.10— juvenile—one-on-one showup without court order—not admissible**

In the prosecution of a juvenile for attempted first degree rape in which a one-on-one showup was conducted without a court order before the juvenile was bound over to superior court, G.S. 7A-596, which prohibits such showups, applied despite the fact that defendant had not had formal charges filed against him because that statute, unlike the statute which governs nontestimonial identification procedures for adults, focuses on taking the juvenile into custody; the statutory factors used to determine exclusion of evidence in criminal cases applied because defendant was tried as an adult, the State has a

special obligation to protect the rights of juveniles, and the Legislature has directed that other procedural aspects of the juvenile code provisions be analogized to the Criminal Procedures Act once the order is issued for non-testimonial identification; and the evidence should have been excluded because the importance of obtaining a court order before conducting non-testimonial identification procedures for a juvenile is clear, there was no question that no attempt whatsoever was made to procure a court order, the deviation from G.S. 7A-596 was complete, there was at least a willful disregard by officers for the clear duties imposed by the law, exclusion of the showup evidence is necessary to deter future violations, and there was prejudice from the testimony. However, the trial court's findings of fact were based on competent evidence and supported the conclusion that the victim's in-court identification was of an origin independent of her experience at the showup. G.S. 15A-974.

APPEAL by defendant from *Davis (James C.), Judge.* Judgment entered 23 May 1984 in RUTHERFORD County Superior Court. Heard in the Court of Appeals 17 September 1985.

The State's evidence tended to show the following facts and circumstances. Dorothy Lee was working at J and L Furniture Store in Forest City on 7 July 1983. A black male entered the store and went to the back to look at merchandise. After about five minutes, Ms. Lee went to the back to investigate. In a small showroom there, the male grabbed her throat and threatened her with a pocket knife. He thereafter molested her sexually, but did not achieve penetration. He told her to "forget it," made her get dressed and then told her to give him money from her pocket-book. At this point Ms. Lee ran out the front door, screaming, and the assailant fled. Ms. Lee described her assailant to police as a black male, six feet tall, skinny, hair cut close to his head and no facial hair. She also noted a characteristic of his walk, that he tapped his thumb and fingers against his pocket as he moved. the store was well-lighted. Ms. Lee estimated that the assault took approximately fifteen minutes.

Later that day, Ms. Lee searched through four mug books. She also spent time looking at "about a hundred or so" black males walking in front of the store. She was not able to spot her assailant.

On 2 August 1983, she noticed a black male with physique similar to her assailant walking in front of the store, tapping his pockets. she called the police, who took her driving in the direction the suspect had walked, but they were unable to find him.

Later that afternoon, the police picked up Ms. Lee to go down to the station and identify the defendant. Defendant was in a room behind a one-way mirror, accompanied only by Lieutenant Davis of the Forest City Police Department, a white male. Ms. Lee identified defendant as her assailant, but requested to be let in the room because she "wanted to be sure." She testified at trial that she identified defendant as her assailant from the beginning, but said she wanted to be sure so that she would be allowed to enter the room, confront the defendant, and "intimidate him like he did me."

Lieutenant Davis testified that defendant had stated his age as sixteen when he was picked up, but that defendant's mother said his age was fifteen. Lieutenant Davis confirmed defendant's age as fifteen the day after Ms. Lee identified the defendant at the one-on-one showup. At no time did Lieutenant Davis attempt to obtain a pre-trial identification order for the showup.

Defendant offered three alibi witnesses who testified that defendant spent the entire day fishing.

On 22 May 1984, defendant was found guilty of attempted first degree rape. He received the presumptive term of six years.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Richard L. Griffin, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender David W. Dorey, for defendant.*

WELLS, Judge.

Defendant argues only one assignment of error, in which he contends that the trial court committed error by denying defendant's motion to suppress and allowing into evidence Ms. Lee's trial testimony as to the one-on-one showup and her in-court identification of defendant; that the showup was conducted in violation of N.C. Gen. Stat. § 7A-596 (1981); and that the trial court failed to make findings of fact or conclusions of law regarding this violation.

> Nontestimonial identification procedures shall not be conducted on any juvenile without a court order issued pursuant to this Article unless the juvenile has been transferred to superior court for trial as an adult . . . .

N.C. Gen. Stat. § 7A-596 (1981). This statute applies to "lineups or similar identification procedures requiring the presence of a juvenile." *Id.* The one-on-one showup occurred on 2 August 1983. Defendant was not bound over for trial in superior court until 26 September 1983. There was confusion by the police as to whether this statute applied to defendant because of initial uncertainty about defendant's age, but it was a simple enough matter, as Lieutenant Davis testified, for him to go "downstairs" the next day to confirm that defendant was fifteen years old. Even if defendant had been sixteen, the statute would still apply. Unless the context clearly requires otherwise, for the purposes of the Juvenile Code, G.S. Subchapter XI, the term "juvenile" means "[a]ny person who has not reached his eighteenth birthday and is not married, emancipated, or a member of the armed services of the United States." N.C. Gen. Stat. § 7A-517(20) (1981). *See also State v. Fincher,* 309 N.C. 1, 305 S.E. 2d 685 (1983).

The State contends that G.S. 7A-596 did not apply to this showup because defendant had not had formal charges filed against him. The argument is made by analogy to the statute concerning the court order requirement for non-testimonial identification procedures involving adults, N.C. Gen. Stat. § 15A-271 (1983), a statute which has been held not to apply to in-custody defendants. *See State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977).

This argument is without merit. N.C. Gen. Stat. § 15A-272 (1983), "Time of application," focuses on the *arrest* of the suspect, while N.C. Gen. Stat. § 7A-597 (1981) (Juvenile Code) focuses on taking the juvenile into *custody,* indicating an expanded time period when procedural protection of juveniles is necessary. G.S. 15A-271, the adult statute, is stated in positive, permissive terms: "A nontestimonial identification order . . . may be issued. . . ." The juvenile counterpart, G.S. 7A-596, is stated in negative, absolute terms with no mention of time limit: "Nontestimonial identification procedures shall not be conducted on any juvenile without a court order . . . ." It is clear from the undisputed evidence below that the one-on-one showup involving the defendant was conducted in violation of the statute.

The effort to fabricate a comprehensive system to deal with crime by juveniles by the passage of the Juvenile Code in 1979 stemmed from a long-held belief that the State should act as *parens patriae* for youthful offenders. *See In re Vinson,* 298 N.C.

640, 260 S.E. 2d 591 (1979). In that case Justice Carlton remarked that "[c]ommensurate with this toughened attitude towards youth crime is the court system's responsibility to assure due process proceedings for youthful offenders." *Id.* One of the Code's purposes is to assure fair and equitable procedures and to protect the constitutional rights of juveniles. *See* N.C. Gen. Stat. § 7A-516(2) (1981). The fact that the showup was conducted on a juvenile does not lessen but should actually increase the burden upon the State to see that the child's rights were protected. *See In re Meyers*, 25 N.C. App. 555, 214 S.E. 2d 268 (1975). There are many provisions of the Code that further illustrate the legislature's concern for careful protection of the juvenile's rights. There are several circumstances when records of nontestimonial identification procedures must be destroyed. N.C. Gen. Stat. § 7A-601 (1981). Also, the legislature provided that any person who willfully violates the provisions requiring a court order for nontestimonial identification procedures shall be guilty of a misdemeanor. N.C. Gen. Stat. § 7A-602 (1981).

We cannot allow the State by analogy to use the laxer procedures for adult defendants to justify easing the stricter standards for juvenile defendants. We conclude that the procedural standards for juveniles must be at least as strict as those for adults, when the legislature has given us no guidance otherwise.

Therefore, by referring to the statutory factors used to determine exclusion of evidence in criminal cases, N.C. Gen. Stat. § 15A-974(2) (1983), we turn to the question of whether the evidence of the showup testified to at trial should have been excluded. Though these factors apply by their terms only to the Criminal Procedure Act, N.C. Gen. Stat. § 15A-101 *et seq.* (1983), we employ them in this instance for three reasons: (1) Terry Wayne Norris was tried as an adult. Had he been an adult and evidence against him had been obtained in violation of one of the Criminal Procedure Act provisions, these factors would apply; (2) Norris was a juvenile. The State as *parens patriae* has an obligation to protect the rights of those under its stewardship. To deny a juvenile the very rights expressly granted to adults would be to provide the juvenile a lower, not higher, level of protection. *See In re Vinson, supra;* (3) the legislature has directed that other procedural aspects of the Juvenile Code provisions be analogized to the Criminal Procedure Act provisions once the order is issued

for nontestimonial identification. *See* N.C. Gen. Stat. § 7A-599 (1981).

In determining whether evidence obtained in violation of G.S. 7A-596 should be excluded, we consider the following factors:

(a) The importance of the particular interest violated;

(b) The extent of the deviation from lawful conduct;

(c) The extent to which the violation was willful;

(d) The extent to which exclusion will tend to deter future violations of the statute.

*Cf.* N.C. Gen. Stat. § 15A-974 (1983).

The importance of obtaining the court order before conducting nontestimonial identification procedures has been amply illustrated in this opinion. The legislature's concern is evident in the negative absolute language "shall not" contained in the statute. G.S. 7A-601 on the destruction of these records and G.S. 7A-602 on the criminal nature of a violation of the statute both attest to the importance the legislature attached to this protection. There is a clear legislative intent that only those procedures authorized by the statute will be tolerated. *See In re Vinson, supra.* Had a court order been obtained, it is likely that a one-on-one showup would not have been sanctioned. Although this procedure is not *per se* a violation of defendant's due process, it is not favored and should not be used when other, less suspect alternatives are available. *See State v. Turner,* 305 N.C. 356, 289 S.E. 2d 368 (1982); *State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974). Finally, once again, there is the concern of the State in its role as *parens patriae* to protect the rights of its juvenile citizens.

There is no question in this case that no attempt whatsoever was made to procure a court order. Therefore, the deviation from lawful conduct under G.S. 7A-596 was complete.

The willfulness of the violation is a more difficult question. We consider the following circumstances: The Forest City police were apparently unaware that, once a juvenile commits a criminal offense, he is subject to the Juvenile Code until he turns eighteen, except as listed in G.S. 7A-517. *See State v. Fincher, supra.* The enforcers of the law, like everyone else, are presumed to

know what the law is. *See In re Forestry Foundation*, 296 N.C. 330, 250 S.E. 2d 236 (1979). Even if we assume that the officers in charge of the defendant believed in good faith and justifiable confusion that a court order was never necessary for a sixteen-year-old, there remains the failure of Lieutenant Davis to clear up the ambiguity as to whether defendant was sixteen or fifteen. Lieutenant Davis had reason to believe that defendant was only fifteen, but he made no effort to either obtain a court order for the showup or to perform the simple task of going "downstairs" to confirm the defendant's age. If not a willful violation of the law, this act was a willful disregard for the clear duties imposed by the law.

Lastly, we consider the extent to which exclusion would deter future violations of the law. In order to prevent the complete evisceration of this statute, it is necessary to ensure that the State will not enjoy the benefits of the illegally obtained evidence. Lieutenant Davis was seemingly unconcerned about the possibility of his being charged with the misdemeanor violation, a threat that had no effect in this case. The exclusionary rule has long been used to deter police conduct. It does so because

> the enforcement officer knows that if he violates a defendant's . . . rights the evidence he obtains in so doing will not be admissible at trial. If the evidence is not admissible (and the prosecution has nothing else upon which to base its case), the defendant cannot be convicted. In effect, the officer's search or seizure has been a waste of time.

*State v. Lombardo*, 306 N.C. 594, 295 S.E. 2d 399 (1982). For the foregoing reasons and the need to uphold the sanctity of the law, we hold that the evidence of the one-on-one showup should have been excluded at trial. We are supported in this conclusion by *In re Stedman*, 305 N.C. 92, 286 S.E. 2d 527 (1982). In *Stedman*, the trial judge had suppressed fingerprint (*i.e.*, nontestimonial) evidence obtained from a juvenile without the required court order. Fingerprints taken later pursuant to a valid court order were also suppressed. The Supreme Court ruled that the second set of fingerprints had been obtained by evidence independent of the original tainted fingerprints and was therefore admissible. Implicit in this ruling was the Court's approval of the suppression of the original fingerprint evidence, obtained without a court order.

We turn now to whether the evidence in question was prejudicial to the defendant. The critical issue for the jury in this case was that of *identity*; therefore, the evidence of the showup went directly to the heart of the case. Ms. Lee's testimony as to the showup was one of six evidentiary presentations to the jury implicating defendant: (1) the assault on 7 July; (2) the sighting in front of the store on 2 August; (3) the identification at the police station on 2 August; (4) defendant's mother's showing Ms. Lee a picture of defendant which Ms. Lee identified as her assailant; (5) Ms. Lee's testimony that defendant walked past the store, laughed and pointed a large stick at her in February 1984 in an apparent effort to intimidate her; and (6) Ms. Lee's in-court identification. The greatest quantity of testimony at trial related to the assault. After that, the showup was the issue upon which most time at trial was spent.

It is only human nature that how well one remembers an incident depends at least partially on one's strength of feeling about that incident. Of course, the narration of the assault itself was highly charged with emotion and must be seen as the likely primary source for decision by the jury. However, testimony of the showup was also very emotional:

A. I wanted to go in and face this man that attac[k]ed me, and I wanted to let him know that I wasn't afraid any more. He had the advantage the first time but not any more.

MR. MITCHELL: OBJECTION, MOVE TO STRIKE.

THE COURT: OVERRULED.

A. And I wanted to look him right in the face when I said he was the man that attacked me, and I did.

. . .

A. Because I wanted to intimidate him like he did me when he was in the store. That's why. And that's why I didn't tell Mr. Davis what I was doing, because I wanted to confront him and make him feel a little bit of what I felt when he was in the store and he had the advantage over me.

Taking all the above factors into consideration, we hold that it was prejudicial error for the court to allow into evidence testimony of the showup. There must be a new trial in which all evidence relating to the one-on-one showup of 2 August 1983 is excluded.

Though the trial court concluded that the showup "was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate the defendant's right to due process," it also felt it necessary to conclude that the in-court identification of the defendant was based solely on her experiences of 7 July 1983. The court's findings of fact concerning independent origin were based on competent evidence in the record and so are conclusive upon this Court. *State v. Tann*, 302 N.C. 89, 273 S.E. 2d 720 (1981). We hold that these findings support the conclusion that, as a matter of law, Ms. Lee's in-court identification was of an origin independent of her experience at the showup.

New trial.

Judges WHICHARD and PHILLIPS concur.