IN THE MATTER OF: WILLIAM VANCE STALLINGS, JUVENILE

No. 716PA85

(Filed 18 November 1986)

1. Criminal Law § 66.11; Infants § 17— showup of juvenile—court order not required

The statute prohibiting the use of certain nontestimonial identification procedures against juveniles without a court order, N.C.G.S. § 7A-596, does not require a court order for a "showup" of a juvenile conducted at the crime scene shortly after the crime occurred.

2. **Criminal Law § 66.11; Infants § 17— showup identification of juvenile—no impermissible suggestiveness**

A showup identification of a juvenile was reliable and not impermissibly suggestive in violation of due process under the totality of the circumstances where a breaking or entering victim was able clearly to observe two juveniles coming from her house; although the victim did not see the juveniles' faces, she accurately described the suspects in terms of age, race, hair color and dress; the victim's attention was focused on the juveniles; she consistently identified respondent juvenile as one of the perpetrators; and there was a lapse of only forty-five to sixty-five minutes between the original sighting and the subsequent identification.

Chief Justice BILLINGS concurring.

Justice MITCHELL joins in this concurring opinion.

Justice MARTIN dissenting.

Justices FRYE and PARKER join in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, 77 N.C. App. 592, 335 S.E. 2d 529 (1985), reversing an order of *LaBarre, J.*, at the 15 November 1984 Juvenile Session of the DURHAM County District Court, denying the juvenile's motion to suppress evidence from an investigatory "showup" and finding the juvenile to have violated N.C.G.S. § 14-54(a), felonious breaking or entering with intent to commit larceny therein. At the 12 December 1984 Juvenile Session of the DURHAM County District Court, *Read, J.*, presiding, the juvenile was adjudged delinquent. The juvenile appealed from both judgments. The Court of Appeals did not address the order of *Read, J.*, but reversed *Judge LaBarre's* denial of the juvenile's motion to suppress. The State's petition for discretionary review was granted on 7 April 1986. Heard in the Supreme Court 16 October 1986.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Special Deputy Attorney General, John H. Watters, Assistant Attorney General, and Robert E. Cansler, Assistant Attorney General, for the State-appellant.*

*Susan K. Seahorn, Assistant Public Defender, for juvenile-appellee.*

*North Carolina Association of Police Attorneys, by Dawn S. Bryant, President, amicus curiae.*

MEYER, Justice.

On 15 October 1984 at approximately 10:00 a.m., the victim, Mrs. Nell Knott, left her home to visit her neighbor Brenda Hamby. After having coffee, the two ladies went into Ms. Hamby's backyard to look at the tomatoes in her garden. While standing by the garden, the ladies observed two young boys coming out of the side door of Mrs. Knott's house. The side door was approximately thirty yards from where the ladies were standing. Mrs. Knott was shocked by the two boys coming out of her house. She yelled at them, saying "what are you doing in my house"? The boys began to run, and Mrs. Knott gave chase until she tired.

Failing to catch the two boys, Mrs. Knott returned to her home and checked the inside of her house. She noticed that the contents of her purse had been rearranged and a part of her wallet was out. She then dialed the 911 emergency telephone number and told the operator what had happened. Detective Crabtree arrived approximately fifteen to twenty minutes later.

Mrs. Knott described both boys as being fairly short. One of them had long brown hair and was wearing jeans and a black T-shirt with a picture on the back. The other boy had on a cap, a black coat, and jeans. Both suspects were described as white males.

After talking with the victim, Detective Crabtree drove in the direction the suspects had been last seen running and stopped at a convenience store located approximately one-quarter mile from the victim's home. Crabtree asked the store clerk if he had seen two white male juveniles in the store. The clerk replied that he had, and pointed behind a display rack. Crabtree walked behind the display rack and saw the two suspects "scrunched down" behind the display rack. Stallings was wearing a black T-shirt, with letters or writing on the back, and jeans. His companion, Drane, had on a black cap, a black jacket, tennis shoes, and jeans. Both suspects' jeans were wet and covered with beggar lice.

Detective Crabtree asked the boys to accompany him to Mrs. Knott's house. Crabtree and the suspects arrived at her house approximately thirty to forty-five minutes after he had left to search for the suspects. (The total time elapsed from the time the victim called the police to the arrival of the suspects back at her house was somewhere between forty-five and sixty-five minutes.)

Crabtree and the suspects got out of the patrol car and approached the victim. Detective Crabtree asked Mrs. Knott, "[A]re these the ones"? The victim first replied, "I don't know." Crabtree asked her to explain her answer. She responded, "I know those are the boys that came out of my house but I don't know what I want to do about it; I'm scared." Crabtree asked her two or three times to be sure he had the right suspects. Mrs. Knott responded that they were the ones and continued to question him about what would be done with them. Detective Crabtree then transported the two juveniles to the Sheriff's Department.

At the hearing before Judge LaBarre, Mrs. Knott testified, over objection, to the showup. She also made an in-court identification of the juvenile. The juvenile moved to suppress both the evidence regarding the showup and the in-court identification by Mrs. Knott. These motions were denied, and the juvenile appealed. The Court of Appeals reversed the denial of the motion to suppress. The State sought and this Court granted discretionary review of the Court of Appeals' judgment.

[1]    The juvenile first argues that the pretrial identification procedure in this case — a "showup" — was conducted in violation of N.C.G.S. § 7A-596. This statute requires a court order before certain "nontestimonial identification" procedures are conducted. These include

> identification by fingerprints, palm prints, footprints, measurements, blood specimens, urine specimens, saliva samples, hair samples, or other reasonable physical examination, handwriting exemplars, voice samples, photographs, and lineups or similar identification procedures requiring the presence of a juvenile.

Detective Crabtree did not secure a court order before taking the juvenile before the prosecuting witness. The juvenile argues that a showup is "similar" to a lineup and is, therefore, prohibited by the statute absent a court order. We disagree.

Provisions dealing with criminal procedure in the juvenile context are codified in Article 48 of Chapter 7A of the North Carolina General Statutes. A reading of this Article persuades us that in enacting these statutes, the legislature's primary concern was the growing problem of juvenile crime. This has been well

documented. *See* North Carolina Department of Crime Control & Public Safety, A Crime Control Agenda for North Carolina, at 338 (1978) ("The juvenile crime rate is the most serious problem confronting the criminal justice system today."). Article 48, then, must be read as a legislative attempt to deal with this problem.

The value of the showup as an investigatory technique has been recognized in many jurisdictions. *See, e.g., Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed. 2d 411 (1972); *Stanley v. Cox,* 486 F. 2d 48 (4th Cir. 1973), *cert. denied,* 416 U.S. 958, 40 L.Ed. 2d 760 (1975); *Terry v. Peyton,* 433 F. 2d 1016 (4th Cir. 1970); *State v. Perkins,* 141 Ariz. 278, 686 P. 2d 1248 (1984); *People v. Craig,* 86 Cal. App. 3d 905, 150 Cal. Rptr. 676 (1978); *People v. Weller,* 679 P. 2d 1077 (Colo. 1984); *State v. Hudson,* 508 S.W. 2d 707 (Mo. 1974); *Hudson v. State,* 675 S.W. 2d 507 (Tex. Crim. 1984). Showups are an efficient technique for identifying a perpetrator when the trail is still fresh. *See generally* J. Cook, Constitutional Rights of the Accused § 6:3, at n. 19 (2d ed. 1986). This Court has, on numerous occasions, sanctioned the use of showups. *See, e.g., State v. Turner,* 305 N.C. 356, 289 S.E. 2d 368 (1982); *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981).

As the Court of Appeals observed, showups of adults do not require a court order and are admissible if due process requirements are met. *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199 (1967); *State v. Sanders,* 33 N.C. App. 284, 235 S.E. 2d 94, *disc. rev. denied,* 293 N.C. 257, 237 S.E. 2d 539 (1977). For the reasons expressed herein, there is an even more compelling reason that the same rule should apply to showups of juveniles, and we so hold.

While we have found no controlling authority involving showups of juveniles, the history of N.C.G.S. § 7A-596 indicates that its purpose was to empower officials to conduct the same identification procedures on juveniles as adults. Final Report, Juvenile Code Revision Committee, at 185, Comment C (1979). We find that legitimate juvenile law enforcement objectives may be met through the use of showups.

Another major concern of the legislature in enacting Article 48 was finding the least restrictive means to achieve legitimate law enforcement objectives. N.C.G.S. § 7A-594 sets out this goal:

In re Stallings

A law-enforcement officer, when he takes a juvenile into temporary custody, should select the least restrictive course of action appropriate to the situation and needs of the juvenile from the following:

(1) To divert the juvenile from the court by

a. Release;

b. Counsel and release;

c. Release to parents;

d. Referral to community resources;

(2) To seek a petition;

(3) To seek a petition and request a custody order.

An examination of the nontestimonial identification techniques listed in N.C.G.S. § 7A-596, including lineups, reveal that they are all methods that intrude significantly upon the juvenile's privacy. The showup, by contrast, is a much less restrictive means of determining, at the earliest stages of the investigation process, whether a suspect is indeed the perpetrator of a crime. If not, the innocent juvenile can be released with little delay and with minimal involvement with the criminal justice system. If so, the juvenile can be expeditiously processed and intervention begun immediately. The showup thus serves the dual goals of protecting the juvenile from more restrictive investigatory techniques such as those listed in the statute and of expediting criminal investigations.

If, as the juvenile contends, the legislature intended to absolutely forbid showups without a court order, this policy of least restriction would be severely undercut. If we were to adopt the reasoning and argument advanced by the juvenile here, it would mean that if an officer reached a crime scene immediately upon the happening of a break-in and found the juvenile perpetrator huddled under the porch of the house he had just fled, the officer could not ask the eyewitness homeowner if the juvenile was the one who the homeowner had just seen inside the house. Such a result would be absurd and could not have been intended by our legislature in enacting N.C.G.S. § 7A-596. The juvenile's reading of the statute would effectively eliminate the showup from the repertoire of investigative techniques available to law enforce-

ment officers. We hold that the legislature did not intend this result. We find that *State v. Norris,* 77 N.C. App. 525, 335 S.E. 2d 764 (1985), upon which the juvenile relies, does not accurately reflect the intent of the legislature in this regard.

[2]    The juvenile argues, in the alternative, that even if the statute does not expressly forbid showups without court orders, the showup conducted in this case violated the fourteenth amendment to the United States Constitution. The juvenile correctly notes that the constitution prohibits pretrial identification procedures that are so suggestive as to pose a danger of misidentification. *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401 (1972). There have been cases where showups were invalidated for this reason. *See, e.g., Smith v. Coiner,* 473 F. 2d 877 (4th Cir. 1973); *State v. Headen,* 295 N.C. 437, 245 S.E. 2d 706 (1978). Judge LaBarre, sitting as the fact-finder, determined that the showup was not impermissibly suggestive and denied the juvenile's motion to suppress. The juvenile nevertheless argues that the procedure followed in this case was constitutionally infirm. Again, we disagree.

In determining whether an identification is reliable, the *Biggers* Court adopted a "totality of the circumstances" approach. Some of the factors that may be examined in determining the reliability of a showup identification are (1) the witness' opportunity to observe the accused, (2) the witness' degree of attention, (3) the accuracy of the witness' description, (4) the witness' level of certainty, and (5) the time elapsed between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. at 199, 34 L.Ed. 2d at 411. *See also State v. Lyszaj,* 314 N.C. 256, 333 S.E. 2d 288 (1985); *State v. Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977).

Applying the above factors to the case at hand, we find that the showup identification was reliable. Mrs. Knott was able to observe clearly the boys coming from her house. While it is true that the boys' faces were not seen, the victim was nevertheless able to give the investigating officer information regarding their race, dress, hair color, size, and approximate age. It is clear that Mrs. Knott's attention was focused on the boys who had come running from her house. Her motivation to observe carefully was great; her susceptibility to distraction slight. The description given to the detective accurately described the suspects in terms

of age, race, hair color, and dress. While the juvenile makes much of the fact that Mrs. Knott had originally seemed unsure of her identification, it became clear that her uncertainty was merely a concern for what would happen to the boys she had identified. She consistently identified this juvenile as one of the perpetrators. Finally, there was a lapse of only forty-five to sixty-five minutes between the original sighting and the subsequent identification. This factor also militates in favor of the validity of this showup.

In summary, we hold that the legislature did not intend to preclude the use of the showup in juvenile investigations. This technique serves the important law enforcement objective of efficiency and 'protects the juvenile from more intrusive identification techniques. While a juvenile is, of course, protected from showups that are so suggestive as to be unreliable, we agree with the trial court that the showup in this case was properly conducted and properly admitted into evidence.

The juvenile makes several other arguments based upon the premise that the showup in this case was impermissible. Also, the North Carolina Association of Police Attorneys, as *amicus curiae*, suggests that if we find the showup to be prohibited in this case, we decide that showups without court orders are nonetheless permissible in cases where juveniles are tried as adults. Since we have held that the showup was permissible under both the statute and the constitution, we need not address these other concerns.

Reversed.

Chief Justice BILLINGS concurring.

When the identical definition of a term appears in two places in our General Statutes and a question arises as to the interpretation of the term, I find it instructive to consider the context and history of both definitions in determining the meaning which the General Assembly intended.

The term "nontestimonial identification" first appeared in North Carolina statutes in 1973 as part of Article 14 of the Criminal Procedure Act, Chapter 15A. A review of that Article and of case law regarding identification procedures known as

showups makes it obvious that showups were not intended to be covered by the definition of nontestimonial identification contained in N.C.G.S. § 15A-271.

"Showup" is a term used for an identification procedure that involves a one-on-one confrontation between a suspect and a witness. Because no person is exhibited to the witness other than the one selected by the law enforcement agent as the likely perpetrator of the crime, the procedure is inherently suggestive. However, that suggestiveness is not alone sufficient to require suppression of the identification; the United States Supreme Court has applied a "totality of the circumstances" test for the courts to apply in considering whether the procedure used was likely to have resulted in mistaken identification, considering its suggestiveness. *Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140 (1977).

When the United States Supreme Court addressed in *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199 (1967), the constitutionality of using evidence derived from showups, it emphasized the urgent necessity for utilizing that procedure in the particular case as a reason for the Court's approval. Necessity in that case resulted from the fear that the victim/witness might die from the wounds inflicted and be unavailable for a later, more informal, identification. Although later cases make it clear that urgent necessity is not an absolute requirement in support of the constitutionality of suggestive identification procedures, *Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140, nevertheless the showup is generally considered to be a tool to be used only in situations which justify immediate action. *See Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed. 2d 411 (1972). When in 1973 the General Assembly enacted N.C.G.S. § 15A-271 defining "nontestimonial identification," the list of identification procedures did not specifically include showups, for a very good reason: showups as normally conducted by their very nature could not be subjected to the 72-hour notice requirement of N.C.G.S. § 15A-277. Thus, it is my view that the statutory definition of nontestimonial identification was not intended to include the exhibition of a suspect to a witness at or near the scene of a crime shortly after the crime occurred and shortly after the suspect's apprehension.

When N.C.G.S. § 7A-596 was enacted in 1979, prohibiting the use of certain procedures against a juvenile without a court

order, the statutory definition of "nontestimonial identification" in the earlier statute, N.C.G.S. § 15A-271, was carried forward without change into § 7A-596. Because I believe that the same definition was not intended to mean one thing in one place within the General Statutes and something else in another place, I concur in the majority view that the juvenile statute was not intended to prohibit showups and that a reasonably conducted showup wherein a suspected juvenile is exhibited for identification to a witness shortly after an offense and the juvenile's lawful apprehension does not violate N.C.G.S. § 7A-596.

Justice MITCHELL joins in this concurring opinion.

Justice MARTIN dissenting.

I respectfully dissent. Contrary to the majority's holding, I believe that careful scrutiny of N.C.G.S. § 7A-596 demonstrates that showups are within the contemplation of the statute. The legislature clearly drafted its definition of nontestimonial identification procedures so that it logically must include showups. In listing the types of procedures requiring court orders, N.C.G.S. § 7A-596 reads "voice samples, photographs, and lineups or similar identification procedures requiring the presence of a juvenile." The majority seems to argue that showups are much less intrusive upon a juvenile's privacy when compared with all of the listed procedures and therefore are not "similar" procedures under the statute. I fear the majority misunderstands the syntax of the sentence in question. The phrase "or similar identification procedures" does not refer back to the entire list (as it would if the sentence read "voice samples, photographs, lineups, or similar identification procedures") but instead refers only to the word "lineups." Overlooking one important comma and the word "and" changes the meaning entirely. If we are to interpret the statute as it was written by the legislature, we need compare showups only to lineups in determining if they are indeed similar procedures.

While a showup usually occurs earlier in the investigative process, in purpose and in practice it is closely related to a lineup and has been consistently treated as similar by the courts. *See Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199 (1967); *United States v. Wade*, 388 U.S. 218, 18 L.Ed. 2d 1149 (1966). Like the

lineup, it is an eyewitness-oriented procedure which seeks to iden-tify the perpetrator of a crime by allowing the witness to view the suspect. The majority fails to explore adequately any per-ceived dissimilarities between showups and lineups, but makes much of the fact that N.C.G.S. § 7A-594 directs law enforcement officers to pursue the "least restrictive course of action" when taking juveniles into custody. The majority reasons that showups, because they may occur early in the investigation and thus allow quick release from suspicion, constitute a minimal intrusion upon the juvenile. This is most emphatically not the case.

Showups are recognized to be innately more suggestive than lineups. *United States v. Wade*, 388 U.S. at 234, 18 L.Ed. 2d at 1161; *State v. Matthews*, 295 N.C. 265, 245 S.E. 2d 727 (1978), *cert. denied*, 439 U.S. 1128, 59 L.Ed. 2d 90 (1979). They must be used with great caution to avoid infringing upon constitutional rights. In labelling the showup as unrestrictive, the majority goes so far as to claim that the procedure actually protects the juvenile more than other identification techniques would. I believe this assertion erroneously equates protection with convenience. It is unclear to me what benefit the juvenile can derive from being subjected to the dangers of an inherently suggestive identification performed without a court order and without the presence of an attorney. While the fact that the procedure is over quickly may expedite the investigation, it potentially imperils the rights of the juvenile far more than the less suggestive lineup would and must fail the least-restrictive-means test for that reason. Even accepting the majority's argument that the juvenile benefits from a supposedly quicker release, the gain is an inconsequential one when com-pared to the protections lost. In any case, I remain unconvinced that obtaining a court order creates significant inconvenience and delay. Since juvenile suspects are routinely released into the custody of their parents, the length of the juvenile's detention would not materially increase if a court order were obtained before the showup is conducted. Such an order could easily be ob-tained once the juvenile has been released from temporary police custody, and the use of showups would not be eliminated com-pletely. The majority's red herring concerning a juvenile discov-ered under the porch of the victim's house does not prove the need for showups without a court order. In such a situation, the officer's investigation is or reasonably should be focused upon a

single prime suspect who has been closely connected to the scene of the crime. No hardship results in seeking a court order before conducting a showup, lineup, or other identification procedure.

In my view, the enactment of a lengthy and detailed juvenile code shows great concern on the part of the legislature not only for dealing effectively with juvenile crime, as the majority suggests, but also for safeguarding the individual rights of juveniles. Juveniles are not, after all, miniature adults. Our criminal justice system recognizes that their immaturity and vulnerability sometimes warrant protections well beyond those afforded adults. It is primarily for that reason that a separate juvenile code with separate juvenile procedures exists.

I find persuasive evidence in the structure of the juvenile code and in the history of N.C.G.S. § 7A-596 itself that the legislature intended to favor juvenile protections over law enforcement expediency. Although one of the purposes of N.C.G.S. § 7A-596 is to authorize nontestimonial identification orders like those allowed for adults, the legislature is careful to indicate that the adult criminal code is a separate entity and that adult identification procedures will not apply to persons charged under the juvenile code. This implies that the two identification sections, while identically worded, will not always be identically interpreted and applied. I would point out that the other provisions relating to nontestimonial identification of juveniles are similar to those in adult cases but contain some significant modifications. For example, nontestimonial identification is authorized only if the offense would be punishable by more than two years in prison if committed by an adult. See N.C.G.S. § 7A-598 (1986). Also, any person conducting nontestimonial identification of a juvenile pursuant to N.C.G.S. § 7A-596 without a court order is guilty of a misdemeanor. See N.C.G.S. § 7A-602 (1986).

Such modifications demonstrate the legislature's intention to treat juvenile nontestimonial identification much more conservatively than similar adult identifications, limiting and controlling the situations in which juveniles can be subjected to the procedures. The legislature clearly was not willing to sanction as broad a use of juvenile nontestimonial identification as that in adult cases. It defies logic to suggest that the legislature, in enacting these juvenile protections, meant to sacrifice juveniles to

suggestive showup identifications for the sake of expediting an investigation. Nowhere does the legislative history of N.C.G.S. § 7A-596 even remotely hint at such a result. The majority, in looking to the Juvenile Code Revision Committee's report for guidance, ignores the implications of the committee's commentary. The committee plainly states, in reference to N.C.G.S. § 7A-596, that "[t]his section requires that an officer obtain a court order before fingerprinting, photographing or conducting *any other nontestimonial identification* on a juvenile." Final Report, Juvenile Code Revision Committee, at 185, Comment C (1979) (emphasis added). Far from indicating that the statute was drafted with some exclusions in mind, this language is all-encompassing. It demonstrates the committee's desire to place a comprehensive prohibition on the conducting of juvenile identification procedures without a court order.

Taking into account the similarity between lineups and showups, the greater risk to juvenile rights posed by showups, and the legislative intent to provide broader protections to juveniles, I would affirm the holding of the Court of Appeals that showups require a court order under N.C.G.S. § 7A-596.

The interesting question raised by the amicus curiae brief must await resolution until presented in a proper case.

Justices FRYE and PARKER join in this dissenting opinion.