Justice BEASLEY
dissenting.
I disagree with the majority and would hold that defendant’s statement, “Um, Can I call my mom?” was an unambiguous invocation of his statutory right to have a parent present during custodial interrogation. Assuming arguendo that defendant’s statement was ambiguous, I also disagree with the majority’s conclusion that because defendant’s request was ambiguous his statutory rights under N.C.G.S. § 7B-2101 were not violated. Because I would affirm the Court of Appeals’ holding that law enforcement officers are required to ask questions to clarify the desire and intent of a juvenile who makes an ambiguous statement relating to his statutory right to have a parent present, I respectfully dissent.
*410 Subsection 7B-2101(a) of the North Carolina General Statutes provides that juveniles must be advised of certain enumerated rights before being subjected to custodial interrogation. As explained by the majority “The statute codifies the juvenile’s Miranda rights and adds the additional protection that the juvenile has the right to have a parent, guardian, or custodian present during questioning.” See N.C.G.S. § 7B-2101(a) (2015).[1] As such, the right to have a parent, guardian, or custodian present, id. § 7B-2101(a)(3), “is not the codification of a federal constitutional right, but rather our General Assembly’s grant to the juveniles of North Carolina of a purely statutory protection in addition to those identified in Miranda.” State v. Saldierna, _ N.C. App. _, _, 775 S.E.2d 326, 332 (2015) (citing, inter alia, State v. Fincher, 309 N.C. 1, 12, 305 S.E.2d 685, 692 (1983) (stating, for purposes of determining the appropriate prejudice standard, that “[t]he failure to advise [a juvenile] defendant of his right to have a parent, custodian or guardian present during questioning is not an error of constitutional magnitude because this privilege is statutory in origin and does not emanate from the Constitution”)). The statute also establishes that a juvenile’s statement cannot be admitted into evidence unless the court “find[s] that the juvenile knowingly, willingly, and understandingly waived” his constitutional and statutory rights. N.C.G.S. § 7B-2101(d) (2015).
As the Court of Appeals stated, “[W]ith regard to a defendant’s Miranda rights to remain silent and to have an attorney present during a custodial interrogation, the law is clear.” Saldierna, _ N.C. App. at _, 775 S.E.2d at 332. A defendant must unambiguously invoke his or her Miranda rights, and law enforcement officers have no obligation to clarify a defendant’s ambiguous statements. See Davis v. United States, 512 U.S. 452, 459, 461-62, 114 S. Ct. 2350, 2355-56 (1994) (“[T]he suspect *411 must unambiguously request counsel,” and law enforcement officers are not required to ask clarifying questions when a suspect’s statement regarding counsel is ambiguous); Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885 (1981) (holding that law enforcement officers must immediately cease questioning upon a suspect’s unambiguous request for counsel and cannot reinitiate interrogation until counsel arrives or the suspect “initiates further communication”). In State v. Golphin, 352 N.C. 364, 533 S.E.2d 168 (2000), cert. denied, 532 U.S. 931, 121 S. Ct. 1379 (2001), this Court extended this rule to juveniles, holding that a juvenile defendant’s right to remain silent must be unambiguously invoked.[2] Id. at 451-52, 533 S.E.2d at 225.
To determine whether a defendant unambiguously invoked his Miranda rights, this Court applies the standard set forth in Davis: “Invocation of the Miranda right to counsel ‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.’ ” Davis, 512 U.S. at 459, 114 S. Ct. at 2355 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209 (1991)). The Court goes on to say that the inquiry is based on what a “reasonable officer in light of the circumstances” would believe the statement to mean. Id. at 459, 114 S. Ct. at 2355 (citations omitted). Here defendant asked to speak to his mother prior to questioning.[3] I agree with the Court of Appeals that Detective Kelly’s question, “You want to call her now before we talk?” is telling. See Saldierna, _ N.C. App. at _ n.6, 775 S.E.2d at 334 n.6 (“Kelly’s question indicates that she believed [defendant] might be asking to delay the interview, at least until he had a chance to speak to his mother.”). Implicit in the protections afforded by subdivision 7B-2101(a)(3) is that law enforcement officers understand whether a juvenile intends to invoke the statutory rights. The *412 majority states that defendant “never gave any indication that he wanted to have [his mom] present for his interrogation .... Instead, defendant simply asked to call her.” Thus, according to the majority, “Defendant’s purpose for making the call was never established.” Despite the majority’s contention, the reasonable conclusion under the circumstances is that defendant wanted his mother present. Why else would defendant want to call his mom “now before [he] talked” if not to seek her advice and protection? The majority and the Court of Appeals agree that defendant’s statement was not an unambiguous invocation of his statutory right to have a parent present.[4] However, defendant’s statement was “sufficiently cleax[ ] that a reasonable police officer in the circumstances would understand the statement to be a request” to have his mother present before questioning. Davis, 512 U.S. at 459, 114 S. Ct. at 2355. In light of this unambiguous request, all questions should have immediately ceased until defendant’s mother was present or defendant reinitiated the conversation. See Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1885.
The cases discussed above only address a defendant’s constitutional Miranda rights, not his statutory rights. In regard to a juvenile’s statutory right to have a parent present, this Court has only addressed a juvenile’s unambiguous invocation of the right. See State v. Smith, 317 N.C. 100, 343 S.E.2d 518 (1986), abrogated in part on other grounds by State v. Buchanan, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001). In Smith this Court stated that law enforcement officers must cease questioning when a juvenile unambiguously invokes his statutory right to have a parent present. Id. at 108, 343 S.E.2d at 522; see State v. Branham, 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002). This Court has not, however, “considered the implications of a juvenile’s ambiguous reference” to his statutory right to have a parent present. Saldierna, _ N.C. App. at _, 775 S.E.2d at 333. The legislature intended to afford juveniles greater *413 protection in subdivision (a)(3) than those afforded by a juvenile’s constitutional Miranda rights codified in N.C.G.S. § 7B-2101(a)(1), (2), and (4). See The Final Report of the Juvenile Code Revision Committee 183 (Jan. 1979) (commenting that the Committee added “[subdivision] (3) . . . to assure that the juvenile may have his parent present during questioning if he desires and [stating that subdivision (3)] is an addition to case law requirements” found in N.C.G.S. § 7B-2101(a)(1), (2), and (4)). Moreover, when viewed in its entirety, section 7B-2101 demonstrates our General Assembly’s acknowledgement that juveniles axe especially vulnerable when subjected to custodial interrogation. See N.C.G.S. § 7B-2101(b) (providing that, in essence, a juvenile under the age of sixteen cannot waive his right to have a parent or attorney present); see also Act of May 26, 2015, ch. 58, sec. 1.1, 2015 N.C. Sess. Laws 126, 126 (increasing the age of juveniles protected by subsection (b) from less than fourteen to less than sixteen years).
According to the majority, this Court’s decision in Smith—applying the Miranda framework set forth in Davis, 512 U.S. at 459, 114 S. Ct. at 2355, to a juvenile’s unambiguous invocation of his right to have a parent present—indicates that a juvenile’s statutory right under subdivision (a)(3) can only be afforded as much protection as a juvenile’s constitutional Miranda rights. As such, the majority concludes that the Miranda rules also apply to juveniles who make ambiguous statements regarding their right to have a parent present. I disagree. I agree with the Court of Appeals that by enacting N.C.G.S. § 7B-2101(a)(3), the legislature demonstrated its intent to afford a juvenile greater protection when attempting to invoke his or her right to have a parent present than when attempting to invoke his or her Miranda rights. Saldiema, _ N.C. App. at _, 775 S.E.2d at 333 (“[R]eview of the provisions of section 7B-2101 reveals an understanding by our General Assembly that the special right guaranteed by subsection (a)(3) is different from those rights discussed in Jimmcta and, in turn, reflects the legislature’s intent that law enforcement officers proceed with great caution in determining whether a juvenile is attempting to invoke this right.”).
Although this Court has held that a “juvenile’s right... to have a parent present during custodial interrogation[ ] is entitled to similar protection [as an adult’s right to have an attorney present],” Smith, 317 N.C. at 106, 343 S.E.2d at 521, it does not follow that the protections afforded to juveniles under subdivision 7B-2101(a)(3) are capped at, and therefore cannot exceed, those provided under Miranda. As previously discussed, Smith involved a situation in which a juvenile defendant unambiguously requested that his mother be brought to the police station before he was *414 questioned. Id. at 102, 343 S.E.2d at 519. This Court held that in such circumstances, the Miranda framework of Davis applied and required law enforcement officers to immediately cease questioning. Id. at 106-07, 343 S.E.2d at 521-22. This Court applied principles established under the Fifth and Sixth Amendments to the “resumption of custodial interrogation” under section 7B-2101.[5] Id. at 106, 343 S.E.2d at 521 (noting that the Miranda cases “are not controlling”). The “resumption of custodial interrogation” principles apply in the context of an unambiguous invocation of rights. See Davis, 512 U.S. at 459-61, 114 S. Ct. at 2355-56 (holding that law enforcement officers must cease questioning after an unambiguous invocation of the right to counsel and cannot resume questioning until counsel is present or the defendant reinitiates communication). This Court did not address ambiguous statements, nor did it affirmatively hold that the protections afforded by subdivision (a) (3) are capped at those afforded to adults under Miranda. Therefore, I agree with the Court of Appeals’ conclusion that the “case law regarding invocation of the Miranda rights guaranteed by the federal Constitution and codified in subsections 7B-2101(a)(1), (2), and (4) does not control our analysis of a juvenile’s ambiguous statement possibly invoking the purely statutory right granted by our State’s General Assembly in section 7B-2101(a)(3).” Saldierna, _N.C. App. at _, 775 S.E.2d at 332.
It is well established that juveniles differ from adults in significant ways and that these differences are especially relevant in the context of custodial interrogation. See, e.g., Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S. Ct. 2687, 2699 (1988) (plurality opinion) (“Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult.”); Gallegos v. Colorado, 370 U.S. 49, 54, 82 S. Ct. 1209, 1212 (1962) (stating that juveniles are “not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and . . . [are] unable to know how to protect [their] own interests or how to get the benefits of [their] constitutional rights” (emphasis added)); Haley v. Ohio, 332 U.S. 596, 599-600, 68 S. Ct. 302, 304 (1948) (plurality opinion) (“[W]e cannot believe that a lad of tender years is a match for the police in such a contest [as custodial *415 interrogation]-He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, crush him.”). As discussed by the United States Supreme Court
[a] child’s age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception. Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself, including any police officer or judge.
Time and again, this Court has drawn these commonsense conclusions for itself. We have observed that children generally are less mature and responsible than adults, that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them, that they are more vulnerable or susceptible to... outside pressures than adults, and so on. Addressing the specific context of police interrogation, we have observed that events that would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. Describing no one child in particular, these observations restate what any parent knows—indeed, what any person knows—about children generally.
Our various statements to this effect are far from unique. The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them.
J.D.B. v. North Carolina, 564 U.S. 261, 272-73, 131 S. Ct. 2394, 2403 (2011) (citations and internal quotation marks omitted).
North Carolina courts have also acknowledged that “[j]uveniles are awarded special consideration in light of their youth and limited life experience.” State v. Oglesby, 361 N.C. 550, 557, 648 S.E.2d 819, 823 (2007) (Timmons-Goodson, J., dissenting) (citing In re Stallings, 318 N.C. 565, 576, 350 S.E.2d 327, 333 (1986) (Martin, J., dissenting)); see In re K.D.L., 207 N.C. App. 453, 459, 700 S.E.2d 766, 771 (2010) (“[W]e cannot forget that police interrogation is inherently coercive—particularly for young people.” (citations omitted)), disc. rev. denied, 365 N.C. 90, 706 S.E.2d 478 (2011). As discussed by Justice Harry C. Martin in his dissent to this Court’s decision in In re Stallings, “Juveniles are not, after all miniature adults. Our criminal justice system recognizes that *416 their immaturity and vulnerability sometimes warrant protections well beyond those afforded adults. It is primarily for that reason that a separate juvenile code with separate juvenile procedures exists.” 318 N.C. at 576, 350 S.E.2d at 333 (Martin, J., dissenting). Justice H. Martin goes on to explain that the Juvenile Code demonstrates “legislative intent to provide broader protections to juveniles.” See id. at 577, 350 S.E.2d at 333. Furthermore, “at least two empirical studies show that ‘the vast majority of juveniles are simply incapable of understanding their Miranda rights and the meaning of waiving those rights.’ ” Oglesby, 361 N.C. at 559 n.3, 648 S.E.2d at 824 n.3 (citation omitted); see Cara A. Gardner, Recent Developments, Failing to Serve and Protect: A Proposal for an Amendment to a Juvenile’s Right to a Parent, Guardian, or Custodian During a Police Interrogation after State v. Oglesby, 86 N.C. L. Rev. 1685, 1698-99 (2008) [hereinafter Failing to Serve and Protect] (“[R] esearch has revealed that only 20.9% of juveniles understand the standard Miranda warnings .... [and] many d[o] not understand that [their right to an attorney means that] the attorney could actually be present during police questioning rather than at some later time. . . . This may indicate that juveniles in North Carolina also have difficulty understanding that they have the right to have a parent... present during an interrogation rather than at some later time.” (footnotes omitted)). Therefore, it is reasonable to believe that juveniles should be afforded greater protections when seeking to have a parent present. See Failing to Serve and Protect at 1695 (“The reason a juvenile in a custodial interrogation has a right to the presence of a parent, guardian, or custodian is presumably so that the adult may assist in protecting the juvenile’s rights.”).
For these reasons, I would hold that when a juvenile makes an ambiguous statement relating to his or her statutory right to have a parent present during a custodial interrogation, law enforcement officers are required to ask clarifying questions to determine whether the juvenile desires to have his or her parent present before the juvenile answers any questions. Specifically, Miranda precedent is not binding on a juvenile’s statutory rights under N.C.G.S. § 7B-2101(a)(3), and I believe that a juvenile can be afforded greater protection than that afforded under Miranda when attempting to invoke his or her statutory right. Additionally, as discussed above, juveniles are not able to fully understand the consequences of their actions and are more likely to submit to pressure. Most adults are nervous and apprehensive when stopped by a uniformed officer even in relatively trivial situations such as routine traffic stops. Imagine then the apprehension, fear, and confusion of a teenager who finds himself under the power and authority of a law enforcement officer. Faced with this pressure, it stands to *417 reason that many juveniles will be unable to unequivocally and unambiguously articulate their desire to have a parent present before police interrogation begins and will certainly lack the ability to appreciate the legal significance of this statutory protection. According to the majority, defendant “never gave any indication that he wanted to have [his mother] present for his interrogation, nor did he condition his interview on first speaking with her. Instead, defendant simply asked to call her.” This standard expects far too much of the typical juvenile being held in police custody and does not comport with our legislature’s intent to protect juveniles’ rights.
I also disagree with the State’s argument that requiring law enforcement officers to ask clarifying questions would place an unreasonable burden on them. The burden, if any, would be slight. In this case, Detective Kelly could have asked a simple question to clarify defendant’s intent when he said, “Um, Can I call my mom?” or to ascertain his desire after he was unable to contact her, such as “Do you want your mother present before I ask you any questions?” Defendant’s response of “no” would leave the detective free to continue the custodial interrogation, whereas the response of “yes” would be considered an unambiguous invocation of his right, and the interrogation must therefore immediately cease. Regardless, “the structure of the juvenile code” is “persuasive evidence . . . that the legislature intended to favor juvenile protections over law enforcement expediency.” In re Stallings, 318 N.C. at 576, 350 S.E.2d at 333 (emphasis added). Thus, because the majority’s holding fails to take into account the significant differences between juveniles and adults and improperly caps the protection of juveniles’ statutory rights under section 7B-2101, I respectfully dissent.

. Subsection 7B-2101(a) states that prior to being questioned “[a]ny juvenile in custody must be advised”:
(1) That the juvenile has a right to remain silent;
(2) That any statement the juvenile does make can be and may be used against the juvenile;
(3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and
(4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.
N.C.G.S. § 7B-2101(a) (2015).

. Golphin did not address a juvenile defendant’s right to have a parent present under N.C.G.S. § 7B-2101(a)(3).

. The following conversation occurred after Detective Kelly advised defendant of his rights:
[Defendant]: Um, Can I call my mom?
[Det. Kelly]: Call your mom now?
[Defendant]: She’s on her um. I think she is on her lunch now.
[Det. Kelly]: You want to call her now before we talk?
[Det. Kelly to other officers]: He wants to call his mom.
(Emphases added.)

. Under the law as it currently stands, I understand how the majority and the Court of Appeals reached the conclusion that defendant’s statement was ambiguous. See State v. Branham, 153 N.C. App. 91, 98-99, 569 S.E.2d 24, 28-29 (2002) (concluding that the juvenile defendant unambiguously invoked his right when he had officers write on the juvenile rights form that he wanted his mother present before questioning); see also State v. Smith, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986) (finding that the juvenile defendant unambiguously invoked his right when he requested that his mom be brought to the station), abrogated in part on other grounds by State v. Buchanan, 353 N.C. 332, 543 S.E.2d 823 (2001). But see State v. Oglesby, 361 N.C. 550, 558-59, 648 S.E.2d 819, 824 (2007) (Timmons-Goodson, J., dissenting) (stating, in regards to a juvenile defendant’s request to call his aunt, that “it is uncontested that. . . the juvenile’s confession in this case would be inadmissible if the individual requested had fallen into the requisite category”)- For the reasons stated more thoroughly below, however, juvenile defendants are provided greater protections than their adult counterparts, especially.in regards to a juvenile’s statutory right and protection to have a parent present.

. Smith discussed a juvenile’s rights under to N.C.G.S. § 7A-595, which is the original codification of the rights afforded to juveniles in section 7B-2101. Section 7A-595 was repealed in 1999 and recodified as part of the Juvenile Code. See Act of Oct. 22, 1998, ch. 202, secs. 5, 6, 1997 N.C. Sess. Laws (Reg. Sess. 1998) 695, 742, 809. The two sections are substantively the same.