STEPHENS, Judge.
*347 In this appeal, we consider a matter of first impression: Whether an ambiguous statement made by a juvenile which implicates his statutory right to have a parent present during a custodial interrogation requires that the law enforcement officer conducting the interview clarify the meaning of the juvenile's statement before continuing her questioning. For the reasons discussed herein, we conclude that it does.
*348 Factual and Procedural Background
This appeal arises from Defendant Felix Ricardo Saldierna's attempt to suppress a confession he gave to police officers while in custody. On 17 and 18 December 2012, several homes in Charlotte were broken into, burglarized, and vandalized. Saldierna was arrested at his home in Fort Mill, South Carolina on 9 January 2013 in connection with those crimes. Saldierna, who was then 16 years old, was transported to Moss Justice Center in York County, South Carolina, where he was questioned by Detective Aimee[1] Kelly of the Charlotte-Mecklenburg Police Department ("CMPD"). Kelly conducted an interview with Saldierna in the booking area of the justice center. Audio of the entire interview was recorded ("the recording"). The recording reveals the following: Saldierna stated that he was bilingual, *328 but read Spanish better than English. At the start of the interview, Saldierna told Kelly that his English was "good," but that he might ask her to explain some things more slowly. However, after this remark, Saldierna never clearly indicated that he did not understand Kelly's questions or statements.
Before asking Saldierna any questions about the crimes, Kelly read him his rights and asked him whether he understood them. During the interview, Kelly gave Saldierna written Juvenile Waiver of Rights forms in both English and Spanish. Kelly read each part of the English language form to Saldierna as he followed along on the forms in both languages. After reading each paragraph, Kelly asked Saldierna if he understood the right discussed in that paragraph and had him initial the copy of the form in English to indicate that he did. Kelly also asked Saldierna to confirm verbally that he understood each right as she read them to him. Saldierna answered "yeah" or "yes ma'am' " to all but one of Kelly's inquiries. Due to the poor quality of the audio recording, Saldierna's response to Kelly's informing him of his right to have an attorney present during the interview is unintelligible, but he responded "yes ma'am' " to Kelly's next statement and question, "If I want to have a lawyer with me during questioning one will be provided to me at no cost before any questioning. Do you understand that?"
Saldierna initialed each statement of rights on the form and the option "I DO wish to answer questions now WITHOUT a lawyer, parent, guardian, or custodian here with me" and signed the form. The transcript of the recording reveals the following exchange then occurred:
*349 K[elly]: It is 1/9/13. It is 12:10PM. [unintelligible background talking among officers]
[Saldierna]: Um, Can I call my mom?
K[elly]: Call your mom now?
[Saldierna]: She's on her um. I think she is on her lunch now.
K[elly]: You want to call her now before we talk?
K[elly] [to other officers]: He wants to call his mom.
[Saldierna]: Cause she's on, I think she's on her lunch.
[Other officer]: [unintelligible] He left her a message on her phone.
[Saldierna]: But she doesn't speak English.
[conversation among officers]
K[elly]: I have mine. Can he dial it from a landline you think?
[more unintelligible conversation among officers]
[Other officer]: [S]tep back outside and we'll let you call your mom outside. [unintelligible]. You're going to have to talk to her. Neither one of us speak Spanish, ok.
[more unintelligible conversation among officers]
[Saldierna can be heard on phone. Call is not intelligible.]
[Sound of door closing].
K[elly]: 12:20: Alright Felix, so, let's talk about this thing going on....
*350 At this point, Kelly continued her interview with Saldierna, and, over the course of the next hour, he confessed his involvement in the incidents in Charlotte the previous December.
On 22 January 2013, Saldierna was indicted on two counts of felony breaking and entering and one count each of conspiracy to commit breaking and entering and conspiracy to commit common law larceny after breaking and entering.[2] On 9 October 2013, Saldierna moved to suppress his confession. The trial court, the Honorable Forrest D. Bridges, Judge presiding, heard the motion on 31 January 2014, and, at the conclusion of the hearing, orally denied Saldierna's motion. The court entered a written order memorializing that ruling on 20 February 2014 that contained the following findings of fact:
*329 1. That Defendant was in custody.
2. That Defendant was advised of his juvenile rights pursuant to North Carolina General Statute § 7B-2101.
3. That Detective Kelly of the Charlotte-Mecklenburg Police Department advised Defendant of his juvenile rights.
4. That Defendant was advised of his juvenile rights in three manners. Defendant was advised of his juvenile rights in spoken English, in written English, and in written Spanish.
5. That Defendant indicated that he understood his juvenile rights as given to him by Detective Kelly.
6. That Defendant indicated he understood his rights after being given and reviewing a form enumerating those rights in Spanish.
7. That Defendant indicated he understood that he had the right to remain silent. Defendant understood that to mean that he did not have to say anything or answer any questions. Defendant initialed next to this right at number 1 on the English rights form provided to him by Detective Kelly to signify his understanding.
*351 8. That Defendant indicated he understood that anything he said could be used against him. Defendant initialed next to this right at number 2 on the English rights form provided to him by Detective Kelly to signify his understanding.
9. That Defendant indicated he understood that he had the right to have a parent, guardian, or custodian there with him during questioning. Defendant understood the word parent meant his mother, father, stepmother, or stepfather. Defendant understood the word guardian meant the person responsible for taking care of him. Defendant understood the word custodian meant the person in charge of him where he was living. Defendant initialed next to this right at number 3 on the English rights form provided to him by Detective Kelly to signify his understanding.
10. That Defendant indicated he understood that he had the right to have a lawyer and that he had the right to have a lawyer there with him at the time to advise and help him during questioning. Defendant initialed next to this right at number 4 on the English rights form provided to him by Detective Kelly to signify his understanding.
11. That Defendant indicated he understood that if he wanted a lawyer there with him during questioning, a lawyer would be provided to him at no cost prior to questioning. Defendant initialed next to this right at number 5 on the English rights form provided to him by Detective Kelly to signify his understanding.
12. That Defendant initialed a space below the enumerated rights on the English rights form that stated the following: "I am 14 years old or more and I understand my rights as explained by Detective Kelly. I DO wish to answer questions now, WITHOUT a lawyer, parent, guardian, or custodian here with me. My decision to answer questions now is made freely and is my own choice. No one has threatened me in any way or promised me special treatment. Because I have decided to answer questions now, I am signing my name below."
13. That Defendant's signature appears on the English rights form below the initialed portions of the form. Defendant's signature appears next to the date, 1-9-13, and *352 the time, 12:10. Detective Kelly signed her name as a witness below Defendant's signature.
14. That after being informed of his rights, informing Detective Kelly he wished to waive those rights, and signing the rights form, Defendant communicated to Detective Kelly that he wished to contact his mother by phone. Defendant was given permission to do so.
15. That Defendant attempted to call his mother, but was unable to speak to her.
16. That Defendant indicated that his mother was on her lunch break at the time he tried to contact her.
17. That Defendant did not at that time or any other time indicate that he changed his mind regarding his desire to speak to Detective Kelly. That Defendant did not *330 at that time or any other time indicate that he revoked his waiver.
18. That Defendant only asked to speak to his mother.
19. That Defendant did not make his interview conditional on having his mother present or conditional on speaking to his mother.
20. That Defendant did not ask to have his mother present at the interview site.
21. That, upon review of the totality of the circumstances, the [c]ourt finds that Defendant's request to speak to his mother was at best an ambiguous request to speak to his mother.
22. That at no time did Defendant make an unambiguous request to have his mother present during questioning.
23. That Defendant never indicated that his mother was on the way or could be present during questioning.
24. That Defendant made no request for a delay of questioning.
Based upon those findings, the trial court made the following conclusions of law:
1. That the State carried its burden by a preponderance of the evidence that Defendant knowingly, willingly, and understandingly waived his juvenile rights.
*353 2. That the interview process in this case was consistent with the interrogation procedures as set forth in North Carolina General Statute § 7B-2101.
3. That none of Defendant's State or Federal rights were violated during the interview conducted of Defendant.
4. That statements made by Defendant were not gathered as a result of any State or Federal rights violation.
On 4 June 2014, Saldierna came back before the trial court, the Honorable Jesse B. Caldwell, Judge presiding, and entered guilty pleas to two charges each of felony breaking and entering and conspiracy to commit breaking and entering, specifically reserving his right to appeal the denial of his motion to suppress. The court imposed a sentence of 6-17 months, suspended that sentence, and placed Saldierna on 36 months of supervised probation. Saldierna gave notice of appeal in open court.
Discussion
Saldierna argues that the trial court erred in denying his motion to suppress the confession he gave to Kelly. Specifically, Saldierna contends that: (1) his request to call his mother was an unambiguous invocation of his right to have a parent present during a custodial interrogation, and that, in the alternative, (2) if his request was ambiguous, due to Saldierna's status as a juvenile, Kelly was required to make further inquiries to clarify whether he actually meant that he was invoking his right to end the interrogation until his mother was present.
I. Standard of review
Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). Likewise, "[t]o determine whether the interrogation has violated [the] defendant's rights, we review the findings and conclusions of the trial court." State v. Branham, 153 N.C.App. 91, 95, 569 S.E.2d 24, 27 (2002).
Here, Saldierna fails to specify which findings of fact he challenges as unsupported by competent evidence, but he does assert that his request to call his mother "was not ambiguous[ ] and that he directly *354 sought to have a parent present [during the interview]." Accordingly, we consider whether competent evidence before the trial court supported findings of fact 18-22, which address that factual issue.
Saldierna alternatively contends that, if his request to call his mother was ambiguous, Kelly was required to clarify whether Saldierna was invoking his right to have a parent present during a custodial interrogation as guaranteed by section 7B2101. Finally, Saldierna *331 argues that the trial court did not appropriately consider his juvenile status in determining that his waiver of rights was knowing and voluntary. As with his arguments regarding the trial court's findings of fact, Saldierna's challenges to the trial court's conclusions of law are not clearly identified and delineated. However, his arguments appear to implicate both conclusions of law 1 and 2, and thus, we further consider whether each is supported by the trial court's findings of fact.
II. Findings of fact 18-22: clarity of request to have a parent present during interview
Saldierna first contends that his question-"Can I call my mom?"-is similar to the unambiguous requests to have a parent present made by the juvenile defendants in Branham and State v. Smith, 317 N.C. 100, 343 S.E.2d 518 (1986), overruled in part on other grounds by State v. Buchanan, 353 N.C. 332, 543 S.E.2d 823 (2001). We find both cases distinguishable and hold that the trial court's findings of fact, specifically that Saldierna's request to speak to his mother was "at best an ambiguous request" and that Saldierna never made an "unambiguous request to have his mother present during questioning [,]" are supported by competent evidence.
In Branham, "[a]fter being advised of his juvenile rights, [the] defendant indicated and had the officers write on the form that he wanted his mother present. Although she was in the building at the time of the interrogation, the officers did not bring her to [the] defendant, but told him he could continue with his statement anyway." 153 N.C.App. at 93, 569 S.E.2d at 25. The defendant subsequently gave the officers a confession that was later admitted against him at trial. Id. This Court held that, "[b]ecause [the] defendant invoked his right to have a parent present during interrogation, all interrogation should have ceased. Since it did not, the trial court erred by denying [the] defendant's motion to suppress his statement, which was elicited in violation of [ section] 7B-2101." Id. at 99, 569 S.E.2d at 29.
Similarly, in Smith, the "defendant, after being advised of his statutory right to have a parent present during police questioning, requested *355 that his mother be brought to the station." 317 N.C. at 107, 343 S.E.2d at 522. Despite a clear and undisputed request to wait until his mother arrived before the interrogation resumed, various police officers continued to provide the defendant information about what his co-defendant was claiming and to ask the defendant whether he wanted give his side of the story. Id. It was that ongoing engagement with the juvenile defendant following his clear request to have a parent present that resulted in a new trial for the defendant. Id. at 108, 343 S.E.2d at 522.
Here, in contrast, Saldierna made a request to call his mother, but made no unequivocal verbal request to have his mother present during questioning, as in Smith, nor did he make any written notation of that request on the waiver form he signed, as in Branham. A careful reading of Saldierna's arguments to this Court shows an alternative contention that his ambiguous request to call his mother should be interpreted in the totality of the circumstances as an invocation of his right to have a parent present during the interview. While we decline Saldierna's invitation to reach that interpretation, our discussion in Part III manifests our concern that this ambiguous statement calls into question the trial court's conclusion of law that no violation of his rights occurred.
III. Conclusion of law 2: compliance with section 7B-2101
Saldierna's primary argument on appeal is that, if his request to call his mother was an ambiguous statement possibly implicating his right under section 7B-2101 to have a parent present during the custodial interrogation, Kelly was required to "clarify[ his] desire to proceed without his mother" before she continued questioning him. We find Saldierna's contentions on this point persuasive.
In recognition of the special status of persons under the age of eighteen, our State's Juvenile Code provides specific interrogation procedures for juveniles:
*332 Any juvenile in custody must be advised prior to questioning:
(1) That the juvenile has a right to remain silent;
(2) That any statement the juvenile does make can be and may be used against the juvenile;
(3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and *356 (4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.
N.C. Gen.Stat. § 7B-2101(a) (2013).[3] Subsections (a)(1), (2), and (4) of this statute simply codify the so-called Miranda rights guaranteed to both adults and juveniles by the Fifth Amendment to the United States Constitution. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that all persons subjected to custodial police interrogations must be advised of their rights to remain silent and to counsel and informed that any statements they make may be used against them in a later legal proceeding). However, subsection (a)(3) is not the codification of a federal constitutional right, but rather our General Assembly's grant to the juveniles of North Carolina of a purely statutory protection in addition to those identified in Miranda. See, e.g., State v. Fincher, 309 N.C. 1, 12, 305 S.E.2d 685, 692 (1983) ("The failure to advise [the juvenile] defendant of his right to have a parent, custodian or guardian present during questioning is not an error of constitutional magnitude because this privilege is statutory in origin and does not emanate from the Constitution."); see also State v. Yancey, 221 N.C.App. 397, 399, 727 S.E.2d 382, 385 (2012). This distinction is critical to our resolution of the issue raised by Saldierna.
As both Saldierna and the State note in their appellate arguments, precedent firmly establishes that invocation of one's Miranda rights must be clear and unequivocal. Thus, a "suspect must unambiguously request counsel.... Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362, 371 (1994) (citations and internal quotation marks omitted). Accordingly, the Court explicitly "decline[d] to adopt a rule requiring officers to ask clarifying questions" when a suspect's statement regarding counsel is ambiguous. Id. at 461, 114 S.Ct. at 2356, 129 L.Ed.2d at 373. Likewise, our Supreme Court has held that a juvenile defendant must make an unambiguous statement in order to invoke his right to remain silent. State v. Golphin, 352 N.C. 364, 451-52, 533 S.E.2d 168, 225 (2000) (citing, inter alia, Davis ), cert. denied, *357 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 305 (2001). In that case, the Court found no error in the admission of the juvenile defendant's inculpatory statement made after his equivocal comment that "he didn't want to say anything about the jeep [connected to a murder]." Id. In sum, with regard to a defendant's Miranda rights to remain silent and to have an attorney present during a custodial interrogation, the law is clear: Such rights must be unequivocally invoked and, where a defendant makes an ambiguous statement touching on those rights, law enforcement officials have no obligation to clarify the defendant's intent or desire. Further, under Golphin, this rule applies with equal force to juvenile defendants. See id.
However, this case law regarding invocation of the Miranda rights guaranteed by the federal Constitution and codified in subsections 7B-2101(a)(1), (2), and (4) does not control our analysis of a juvenile's ambiguous statement possibly invoking the purely statutory right granted by our State's General Assembly in section 7B-2101(a)(3). Further, while our appellate courts have addressed *333 the effect of a juvenile's unambiguous invocation of his right to have a parent present during a custodial interrogation, see, e.g., Smith, 317 N.C. at 107, 343 S.E.2d at 522 ; Branham, 153 N.C.App. at 93, 569 S.E.2d at 25, we are aware of no case in this State which has considered the implications of a juvenile's ambiguous reference to that protection.
The State urges this Court to apply the same analysis and rule regarding ambiguity to a juvenile's right to have a parent present during questioning as we must apply to the Miranda rights codified in section 7B-2101(a). However, our review of the provisions of section 7B-2101 reveals an understanding by our General Assembly that the special right guaranteed by subsection (a)(3) is different from those rights discussed in Miranda and, in turn, reflects the legislature's intent that law enforcement officers proceed with great caution in determining whether a juvenile is attempting to invoke this right.[4]
First, and most obviously, the right to have a parent present during custodial interrogations is not a constitutional right provided to all suspects of whatever age. Instead, it is an additional protection specifically granted through our Juvenile Code to the children of our State, a right which goes beyond the protections offered to adult suspects during *358 interrogations. See, e.g., N.C. Gen.Stat. § 7B-2101 ; Fincher, 309 N.C. at 12, 305 S.E.2d at 692. That our legislature would choose to extend such a special protection to the children of this State is neither surprising nor unique to the circumstance of police interrogations. As the United States Supreme Court has recently observed,
[a] child's age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception. Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself, including any police officer or judge.
Time and again, this Court has drawn these commonsense conclusions for itself. We have observed that children generally are less mature and responsible than adults; that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them; that they are more vulnerable or susceptible to outside pressures than adults; and so on. Addressing the specific context of police interrogation, we have observed that events that would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. Describing no one child in particular, these observations restate what any parent knows-indeed, what any person knows-about children generally.
Our various statements to this effect are far from unique. The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them. Like this Court's own generalizations, the legal disqualifications placed on children as a class-e.g., limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent-exhibit the settled understanding that the differentiating characteristics of youth are universal.
J.D.B., --- U.S. at ----, 131 S.Ct. at 2403-04, 180 L.Ed.2d at 323-24 (citations, internal quotation marks, and ellipses omitted).[5]
*334 *359 Indeed, section 7B-2101(b) recognizes that such " differentiating characteristics of youth" render certain juveniles particularly dependent on their parents (or other responsible adults) when faced with custodial interrogations:
When the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney. If an attorney is not present, the parent, guardian, or custodian as well as the juvenile must be advised of the juvenile's rights as set out in subsection (a) of this section; however, a parent, guardian, or custodian may not waive any right on behalf of the juvenile.
N.C. Gen.Stat. § 7B-2101(b). In other words, juveniles under the age of 14 cannot waive their rights to have either a parental figure or an attorney present when making an inculpatory statement while in custody, an additional protection not available to adults in a like situation. See id. We also take notice that our General Assembly, like the United States Supreme Court, appears to have found persuasive concerns about the special vulnerability of juveniles subject to custodial interrogations: In May 2015, it amended this statute, applicable to offenses committed on or after 1 December 2015 to extend the special protections of subsection 7B-2101(b) to any juvenile "less than 16 years of age[.]" See 2015 N.C. Sess. Laws 58. While we recognize that this amendment would not have applied to Saldierna, even had it been in effect at the time of the then-16-year-old's custodial interrogation, we find it instructive that the lawmakers elected by the citizens of our State have determined that children only months younger than Saldierna can never waive the right to have a parental figure or attorney present during such a high-stakes and potentially life-altering procedure. This determination by our legislative branch lends significant additional support to our holding: That an ambiguous statement touching on a juvenile's right to have a parent *360 present during an interrogation triggers a requirement for the interviewing officer to clarify the juvenile's meaning.[6]
In sum, in reviewing the trial court's order denying Saldierna's motion to suppress his confession, we conclude that the findings of fact regarding the ambiguous nature of Saldierna's statement, "Can I call my mom[,]" are supported by competent evidence. However, because we conclude that Saldierna's ambiguous statement required Kelly to clarify whether he was invoking his right to have a parent present during the interview, we hold that the trial court erred in concluding that Kelly complied with the provisions of section 7B-2101. Accordingly, we reverse the trial court's order, vacate the judgments entered upon Saldierna's guilty pleas, and remand to the trial court with instructions to grant the motion to suppress and for further proceedings.
VACATED, REVERSED, and REMANDED.
Judges BRYANT and DIETZ concur.

Kelly's first name is spelled "Aimee" in the hearing transcript, but the briefs of both parties and some other documents in the record on appeal spell her name "Amy."

Only these four indictments are included in the record on appeal. However, the transcript of plea lists five additional offenses, including breaking and entering, conspiracy, and larceny, which were dismissed by the State pursuant to the plea agreement. The file numbers of those offenses suggest that they arose from the events of December 2012.

The rights now guaranteed to juveniles pursuant to section 7B-2101 were originally codified in N.C. Gen.Stat. § 7A-595, which was repealed effective 1 July 1999 and then re-codified as part of our Juvenile Code. See 1998 N.C. Sess. Laws 202. Although the wording differed slightly in section 7A595, the substance of its subsections (a)(1)-(4) are indistinguishable from that in subsections (a)(1)-(4) of section 7B-2101.

We offer no opinion regarding Saldierna's assertion that a logical extension of the recent holding in J.D.B. v. North Carolina, ---U.S. ----, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), would require that law enforcement officers clarify ambiguous statements by juveniles which could implicate the Miranda rights included in section 7B-2101, and that, in turn Golphin must be overruled. That issue is not before us in the instant appeal.

Because it is undisputed that Saldierna was in custody and thus entitled to the protections of section 7B-2101 at the time of his interview with Kelly, the United States Supreme Court's decision in J.D.B. is not directly applicable to Saldierna's argument on appeal. SeeJ.D.B., ---U.S. at ----, 131 S.Ct. at 2399, 180 L.Ed.2d at 318 (holding that "the age of a child subjected to police questioning is relevant to the custody analysis of Miranda "). Nonetheless, this discussion of the well-recognized distinctions between children and adults in various everyday and legal contexts provides a useful framework for understanding the provisions of section 7B-2101 and resolving the issues before us in this case.

We find telling Kelly's response when, just after asking to call his mother, Saldierna explained that he believed she was on her lunch break at that time: "You want to call her now before we talk ?" (Emphasis added). Kelly's question indicates that she believed Saldierna might be asking to delay the interview, at least until he had a chance to speak to his mother. The trial court's unchallenged finding of fact establishes that Saldierna was not able to reach his mother before Kelly resumed her questioning.