IN THE SUPREME COURT OF NORTH CAROLINA

No. 271PA15

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

FELIX RICARDO SALDIERNA

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 775 S.E.2d 326 (2015), reversing an order denying defendant's motion to suppress entered on 20 February 2014 by Judge Forrest D. Bridges, vacating a judgment entered on 4 June 2014 by Judge Jesse B. Caldwell, both in Superior Court, Mecklenburg County, and remanding the case for further proceedings. Heard in the Supreme Court on 16 February 2016.

> *Roy Cooper, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State-appellant.*

> *Goodman Carr, PLLC, by W. Rob Heroy, for defendant-appellee.*

EDMUNDS, Justice.

Defendant, a juvenile, asked to telephone his mother while undergoing custodial questioning by police investigators. The call was allowed, after which the interrogation continued. The trial court denied defendant's motion to suppress the statements he made following the call. We conclude that defendant's request to call his mother was not a clear invocation of his right to consult a parent or guardian

before proceeding with the questioning.  Accordingly, we reverse the decision of the Court of Appeals that reversed the trial court's order denying the motion to suppress.

After several homes around Charlotte were broken into on 17 and 18 December 2012, Charlotte-Mecklenburg Police arrested defendant on 9 January 2013.  At the time, defendant was sixteen and one-half years old.  The arresting officers took defendant to a local police station where Detective Kelly (Kelly) interrogated him.  Before beginning her interrogation, Kelly provided defendant with both English and Spanish versions of the Juvenile Waiver of Rights Form routinely used by the Charlotte-Mecklenburg Police Department to explain the protections afforded juveniles under N.C.G.S. § 7B-2101.  These forms advised defendant that he had the right to remain silent; that anything he said could be used against him; that he had the right to have a parent, guardian, or custodian present during the interview; that he had the right to speak to a lawyer and to have a lawyer present to help him during questioning; and that a lawyer would be provided at no cost prior to questioning if he so desired.  Kelly also read these rights in English to defendant, pausing after each to ask if defendant understood.  Defendant initialed the English form beside each enumerated right and the section that noted:

> I am 14 years old or more and I understand my rights as explained by Officer/Detective Kely [sic].  I DO wish to answer questions now, WITHOUT a lawyer, parent, guardian, or custodian here with me.  My decision to answer questions now is made freely and is my own choice.  No one has threatened me in any way or promised me special treatment.  Because I have decided to answer

questions now, I am signing my name below.

The words "I DO wish to answer questions now" on the form are circled. Only after defendant signed the form did Detective Kelly begin the interrogation.

Kelly had gone no further than noting the time and date for the audio recording when defendant asked, "Um, can I call my mom?" Detective Kelly offered her cellular telephone to defendant and allowed him to step out of the booking room to make the call. Detective Kelly could hear defendant but was not sure if he placed one call or two. Defendant did not reach his mother but did speak to someone else. However, because defendant spoke Spanish while on the phone, Kelly could not provide any details concerning the nature of the conversation. Upon defendant's return to the booking area, Kelly resumed her questioning. Defendant did not object and made no further request to contact anyone. During the ensuing interview, defendant confessed that he had been involved in the break-ins.

Defendant was indicted, *inter alia*, for two counts of felony breaking and entering, conspiracy to commit breaking and entering, and conspiracy to commit common law larceny after breaking and entering. On 9 October 2013, defendant moved to suppress his confession, arguing that it was illegally obtained in violation both of his rights as a juvenile under N.C.G.S. § 7B-2101 and of his rights under the United States Constitution. After conducting an evidentiary hearing, the trial court denied the motion in an order entered on 20 February 2014, finding as facts that defendant was advised of his juvenile rights and, after receiving forms setting out

these rights both in English and Spanish and having the rights read to him in English by Kelly, indicated that he understood them. In addition, the trial court found that defendant informed Kelly that he wished to waive his juvenile rights and signed the form memorializing that wish. Although defendant then unsuccessfully sought to contact his mother, the court found:

17. That Defendant did not at that time or any other time indicate that he changed his mind regarding his desire to speak to Detective Kelly. That Defendant did not at that time or any other time indicate that he revoked his waiver.

18. That Defendant only asked to speak to his mother.

19. That Defendant did not make his interview conditional on having his mother present or conditional on speaking to his mother.

20. That Defendant did not ask to have his mother present at the interview site.

21. That, upon review of the totality of the circumstances, the Court finds that Defendant's request to speak to his mother was at best an ambiguous request to speak to his mother.

22. That at no time did Defendant make an unambiguous request to have his mother present during questioning.

23. That Defendant never indicated that his mother was on the way or could be present during questioning.

24. That Defendant made no request for a delay of questioning.

Based on those findings, the trial court determined that the interview was conducted in a manner consistent with N.C.G.S. § 7B-2101 and did not violate any of defendant's state or federal rights. The court concluded as a matter of law that the State met its burden of establishing by a preponderance of the evidence that defendant "knowingly, willingly, and understandingly waived his juvenile rights."

On 4 June 2014, defendant entered pleas of guilty to two counts of felony breaking and entering and two counts of conspiracy to commit breaking and entering, while reserving his right to appeal from the denial of his motion to suppress. The court sentenced defendant to a term of six to seventeen months, suspended for thirty-six months subject to supervised probation.

The Court of Appeals reversed the trial court's order denying defendant's motion to suppress, vacated the judgments entered upon defendant's guilty pleas, and remanded the case to the trial court for further proceedings. *State v. Saldierna*, ___ N.C. App. ___, ___, 775 S.E.2d 326, 334 (2015). The Court of Appeals recognized that the trial court correctly found that defendant's statement asking to telephone his mother was ambiguous at best. *Id.* at ___, 775 S.E.2d at 331. However, it went on to conclude that, unlike the invocation of *Miranda* rights by an adult, a juvenile need not make a clear and unequivocal request in order to exercise his or her right to have a parent present during questioning. *Id.* at ___, 775 S.E.2d at 333-34. Instead, the

Court of Appeals held that when a juvenile between the ages of fourteen and eighteen[1] makes an ambiguous statement that potentially pertains to the right to have a parent present, an interviewing officer must clarify the juvenile's meaning before proceeding with questioning. *Id.* at ___, 775 S.E.2d at 334. The Court of Appeals based this distinction on the fact that *Miranda* rights are rooted in the United States Constitution, while the right to have a parent present during custodial interrogations is an additional statutory protection for juveniles who, by virtue of their age, lack the life experience and judgment of an adult. *Id.* at ___, 775 S.E.2d at 333.

This Court granted the State's petition for discretionary review. We review an opinion of the Court of Appeals for errors of law. N.C. R. App. P. (16)(a). "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). Findings of fact are binding on appeal if supported by competent evidence, *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted), while conclusions of law are reviewed de novo, *State v. Ortiz–Zape*, 367 N.C.

---

[1] Before 2015, the pertinent part of the statute read: "When the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney." N.C.G.S. § 7B-2101(b) (2013). In 2015, the General Assembly amended subsection 7B-2101(b) to raise the relevant age limit to "less than 16 years of age." Act of May 26, 2015, ch. 58, sec. 1.1, 2015 N.C. Sess. Laws 126, 126.

1, 5, 743 S.E.2d 156, 159 (2013) (citing *Biber*, 365 N.C. at 168, 712 S.E.2d at 878), *cert. denied*, ___ U.S. ___, 134 S. Ct. 2660, 189 L. Ed. 2d 208 (2014).

In evaluating whether the trial court correctly denied defendant's motion to suppress, we first must consider the threshold question of whether defendant invoked his right to have his mother present during the custodial interview. We must also consider whether defendant knowingly and voluntarily waived his rights under section 7B-2101 of the North Carolina General Statutes and under the constitutions of North Carolina and the United States, thus making his confession admissible. We begin with the former inquiry.

The State argues that defendant's request to call his mother was not an invocation of his right to have a parent present under N.C.G.S. § 7B-2101(a)(3). The State points out that defendant simply asked to call his mother, which the detective readily permitted. He never requested his mother's presence or indicated that he wished to suspend the interview until he could reach her. The State contends that when a juvenile's statement is ambiguous, law enforcement officers have no additional duty to ascertain whether the juvenile is invoking his statutory rights or whether they may continue questioning the minor.

In response, defendant argues that, according to the plain language of N.C.G.S. § 7B-2101, the interview should have ceased until defendant spoke with his mother or indicated his desire to proceed without her, even though the precise import of his question to the detective was unclear. Should we disagree with this statutory

interpretation, defendant makes an argument under the United States Constitution that we should extend the rationale in *J.D.B. v. North Carolina*, 564 U.S. 261, 264-65, 131 S. Ct. 2394, 2398-99, 180 L. Ed. 2d 310, 318-19 (2011), which held that the age of a juvenile is a factor in determining whether he or she was in police custody for purposes of *Miranda*, and hold that reviewing courts must take into account the juvenile's age and maturity level when determining the admissibility of juvenile confessions.

As to defendant's statutory argument, N.C.G.S. § 7B-2101(a) establishes that juveniles must be advised of certain rights prior to a custodial interrogation. The statute codifies the juvenile's *Miranda* rights and adds the additional protection that the juvenile has the right to have a parent, guardian, or custodian present during questioning. N.C.G.S. § 7B-2101(a) (2015). A statement made during custodial interrogation is admissible only if the juvenile knowingly, willingly, and understandingly has waived his constitutional and statutory rights. *Id.* § 7B-2101(d) (2015).

This Court has recognized that a juvenile's statutory right to have a parent present during custodial interrogation is analogous to the constitutional right to counsel and therefore is entitled to the same protection. *State v. Smith*, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986), *abrogated in part on other grounds by State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001). In *Smith*, we noted that the Supreme Court of the United States held in *Edwards v. Arizona*, 451 U.S. 477, 101

S. Ct. 1880, 68 L. Ed. 2d 378 (1981), that after a defendant expresses a desire to deal with police only through counsel, he or she may not be questioned further until counsel is present or the defendant reinitiates communication with law enforcement. 317 N.C. at 106, 343 S.E.2d at 521.  This Court in *Smith* applied that same principle in the context of juvenile law to hold that, when a juvenile unambiguously requested that his mother be brought to the police station, officers were required to cease all questioning until the mother arrived or the juvenile reinitiated discussions.  *Id.* at 107, 343 S.E.2d at 522.  These cases leave no doubt that a juvenile's constitutional rights under *Miranda* and statutory rights under N.C.G.S. § 7B-2101(a) are of equal weight and given equal consideration.

Nevertheless, the Supreme Court of the United States also has held that, when an individual under interrogation mentions an attorney with such vagueness that law enforcement investigators are left unsure whether the comment is an invocation of the right to counsel, police have no duty to ask clarifying questions and may continue with the interrogation. *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362, 371 (1994) (holding that invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney" (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209, 115 L. Ed. 2d 158, 169 (1991))). In other words, the objective test set out in *Davis* considers whether a reasonable officer under the circumstances would have understood the defendant's statement to

be an invocation of his or her right to have an attorney present. *Davis*, *id.* at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371.

This Court has adopted the analytical framework found in *Davis* when determining whether a defendant has invoked his or her constitutional rights. For instance, in *State v. Boggess*, 358 N.C. 676, 600 S.E.2d 453 (2004), we held that the defendant's statement to police that "[i]f y'all going to treat me this way, then I probably would want a lawyer" did not constitute an invocation of the defendant's right to an attorney. *Id.* at 687, 600 S.E.2d at 460; *see also State v. Hyatt*, 355 N.C. 642, 655-56, 566 S.E.2d 61, 70-71 (2002) (holding that the defendant did not invoke his right to counsel when a nearby officer "could have heard" the defendant whisper to his father that "I want you to get me a lawyer"), *cert. denied*, 537 U.S. 1133, 123 S. Ct. 916, 154 L. Ed. 2d 823 (2003). Similarly, in *State v. Waring*, 364 N.C. 443, 701 S.E.2d 615 (2010), *cert. denied*, 565 U.S. 832, 132 S. Ct. 132, 181 L. Ed. 2d 53 (2011), we held that the defendant's statement that he "was not going to snitch" when questioned about his accomplice's name was not an unambiguous invocation of his right to remain silent. *Id.* at 473, 701 S.E.2d at 635.

We have also applied *Davis* when the suspect under interrogation is a juvenile. *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, 532 U.S. 931, 121 S. Ct. 1379, 149 L. Ed. 2d 305 (2001). In *Golphin*, the juvenile defendant was apprehended after he and his brother committed an armed robbery, stole a vehicle, and murdered two police officers. *Id.* at 380, 386-87, 533 S.E.2d at 183, 187. After

he was detained, the defendant waived his juvenile rights under section 7B-2101 and gave a statement to an agent of the State Bureau of Investigation. *Id.* at 449, 533 S.E.2d at 224. When the agent specifically asked the defendant whether he was aware of an incident involving a Jeep, the defendant responded that "he didn't want to say anything about the [J]eep. He did not know who it was or he would have told us." *Id.* at 451, 533 S.E.2d at 225. Upon further questioning, however, the defendant admitted that his brother shot at a Jeep that was following them. *Id.* at 387, 449, 533 S.E.2d at 187, 224.

On appeal, the defendant argued that the agent violated his constitutional right to silence by continuing to question him after he requested not to discuss the Jeep. *Id.* at 448-49, 533 S.E.2d at 224. In rejecting the defendant's argument, we applied the *Davis* analysis and concluded that the defendant's statement was not an unambiguous request to remain silent. *Id.* at 450-51, 533 S.E.2d at 225. Instead, the statement appeared to be an acknowledgment that, had he known who was involved, the defendant would have shared that information freely. *Id.* at 451, 533 S.E.2d at 225. As a result, it was reasonable for the agent to continue the questioning because the defendant failed clearly to invoke any of his rights. *Id.* at 451-52, 533 S.E.2d at 225. In reaching this conclusion, we confirmed both that the *Davis* analysis applies when evaluating whether a juvenile defendant has invoked his or her juvenile rights during a custodial interrogation and that law enforcement officers are not required

to seek clarification of ambiguous statements made by juvenile defendants under interrogation. *See id.* at 451, 533 S.E.2d at 225.

Because a juvenile's statutory right to have a parent or guardian present during questioning is entitled to the same protection as the constitutional right to counsel, we must apply *Davis* in determining whether defendant's statement—"Um, can I call my mom?"—was a clear and unambiguous invocation of his right to have his parent or guardian present during questioning. We conclude that it was not.

Although defendant asked to call his mother, he never gave any indication that he wanted to have her present for his interrogation, nor did he condition his interview on first speaking with her. Instead, defendant simply asked to call her. When the request was made, Kelly immediately loaned defendant her personal cellular telephone so that he could make the call. Defendant's purpose for making the call was never established. Whatever his reasons, defendant did not "articulate his desire to have [a parent] present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for [a parent]," especially in light of the fact that defendant had just signed the portion of the juvenile rights form expressing his desire to proceed on his own. *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371. As the trial court pointed out, defendant's statement was at best an ambiguous invocation of his right to have his mother present. As in *Davis*, without an unambiguous, unequivocal invocation of defendant's right under N.C.G.S. § 7B-2101(a)(3), law enforcement officers had no duty to ask

clarifying questions or to cease questioning. Because defendant's juvenile statutory rights were not violated, we reverse the decision of the Court of Appeals to the contrary.

Nevertheless, the admissibility of defendant's confession is a two-pronged inquiry, as noted above. Even though we have determined that defendant's N.C.G.S. § 7B-2101(a)(3) right was not violated, defendant's confession is not admissible unless he knowingly, willingly, and understandingly waived his rights. N.C.G.S. § 7B-2101(d). The Court of Appeals did not reach this question and instead erroneously resolved the case upon the first prong. *Saldierna*, ___ N.C. App. at ___, 775 S.E.2d at 334. Because we have concluded that defendant's right under subdivision 7B-2101(a)(3) was not violated, we remand this case to the Court of Appeals for consideration of the validity of defendant's waiver of his statutory and constitutional rights.

REVERSED AND REMANDED.


Justice BEASLEY dissenting.

I disagree with the majority and would hold that defendant's statement, "Um, Can I call my mom?" was an unambiguous invocation of his statutory right to have a parent present during custodial interrogation. Assuming *arguendo* that defendant's statement was ambiguous, I also disagree with the majority's conclusion that because defendant's request was ambiguous his statutory rights under N.C.G.S. § 7B-2101

-13-

were not violated. Because I would affirm the Court of Appeals' holding that law enforcement officers are required to ask questions to clarify the desire and intent of a juvenile who makes an ambiguous statement relating to his statutory right to have a parent present, I respectfully dissent.

Subsection 7B-2101(a) of the North Carolina General Statutes provides that juveniles must be advised of certain enumerated rights before being subjected to custodial interrogation. As explained by the majority, "The statute codifies the juvenile's *Miranda* rights and adds the additional protection that the juvenile has the right to have a parent, guardian, or custodian present during questioning." *See* N.C.G.S. § 7B-2101(a) (2015).[2] As such, the right to have a parent, guardian, or custodian present, *id.* § 7B-2101(a)(3), "is *not* the codification of a federal constitutional right, but rather our General Assembly's grant to the juveniles of North Carolina of a purely statutory protection *in addition* to those identified in *Miranda*." *State v. Saldierna*, ___ N.C. App. ___, ___, 775 S.E.2d 326, 332 (2015)

---

[2] Subsection 7B-2101(a) states that prior to being questioned "[a]ny juvenile in custody must be advised":

    (1) That the juvenile has a right to remain silent;
    (2) That any statement the juvenile does make can be and may be used against the juvenile;
    (3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and
    (4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.

N.C.G.S. § 7B-2101(a) (2015).

(citing, *inter alia*, *State v. Fincher*, 309 N.C. 1, 12, 305 S.E.2d 685, 692 (1983) (stating, for purposes of determining the appropriate prejudice standard, that "[t]he failure to advise [a juvenile] defendant of his right to have a parent, custodian or guardian present during questioning is not an error of constitutional magnitude because this privilege is statutory in origin and does not emanate from the Constitution")). The statute also establishes that a juvenile's statement cannot be admitted into evidence unless the court "find[s] that the juvenile knowingly, willingly, and understandingly waived" his constitutional and statutory rights. N.C.G.S. § 7B-2101(d) (2015).

As the Court of Appeals stated, "[W]ith regard to a defendant's *Miranda* rights to remain silent and to have an attorney present during a custodial interrogation, the law is clear." *Saldierna*, ___ N.C. App. at ___, 775 S.E.2d at 332. A defendant must unambiguously invoke his or her *Miranda* rights, and law enforcement officers have no obligation to clarify a defendant's ambiguous statements. *See Davis v. United States*, 512 U.S. 452, 459, 461-62, 114 S. Ct. 2350, 2355-56 (1994) ("[T]he suspect must unambiguously request counsel," and law enforcement officers are not required to ask clarifying questions when a suspect's statement regarding counsel is ambiguous); *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885 (1981) (holding that law enforcement officers must immediately cease questioning upon a suspect's unambiguous request for counsel and cannot reinitiate interrogation until counsel arrives or the suspect "initiates further communication"). In *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, 532 U.S. 931, 121 S. Ct. 1379 (2001),

this Court extended this rule to juveniles, holding that a juvenile defendant's right to remain silent must be unambiguously invoked.[3]  *Id.* at 451-52, 533 S.E.2d at 225.

To determine whether a defendant unambiguously invoked his *Miranda* rights, this Court applies the standard set forth in *Davis*: "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209 (1991)).  The Court goes on to say that the inquiry is based on what a "reasonable officer in light of the circumstances" would believe the statement to mean.  *Id.* at 459, 114 S. Ct. at 2355 (citations omitted).  Here defendant asked to speak to his mother prior to questioning.[4]  I agree with the Court of Appeals that Detective Kelly's question, "You want to call her *now before we talk*?" is telling.  *See Saldierna*, ___ N.C. App. at ___ n.6, 775 S.E.2d at 334 n.6 ("Kelly's question indicates

---

[3] *Golphin* did not address a juvenile defendant's right to have a parent present under N.C.G.S. § 7B-2101(a)(3).

[4] The following conversation occurred after Detective Kelly advised defendant of his rights:

> [Defendant]:  Um, Can I call my mom?
>
> [Det. Kelly]:  Call your mom *now*?
>
> [Defendant]:  She's on her um.  I think she is on her lunch now.
>
> [Det. Kelly]:  *You want to call her now before we talk*?
>
> [Det. Kelly to other officers]:  He wants to call his mom.

(Emphases added.)

-16-

that she believed [defendant] *might be* asking to delay the interview, at least until he had a chance to speak to his mother."). Implicit in the protections afforded by subdivision 7B-2101(a)(3) is that law enforcement officers understand whether a juvenile intends to invoke the statutory rights. The majority states that defendant "never gave any indication that he wanted to have [his mom] present for his interrogation . . . . Instead, defendant simply asked to call her." Thus, according to the majority, "Defendant's purpose for making the call was never established." Despite the majority's contention, the reasonable conclusion under the circumstances is that defendant wanted his mother present. Why else would defendant want to call his mom "now before [he] talked" if not to seek her advice and protection? The majority and the Court of Appeals agree that defendant's statement was not an unambiguous invocation of his statutory right to have a parent present.[5] However, defendant's statement was "sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request" to have his mother

---

[5] Under the law as it currently stands, I understand how the majority and the Court of Appeals reached the conclusion that defendant's statement was ambiguous. *See State v. Branham*, 153 N.C. App. 91, 98-99, 569 S.E.2d 24, 28-29 (2002) (concluding that the juvenile defendant unambiguously invoked his right when he had officers write on the juvenile rights form that he wanted his mother present before questioning); *see also State v. Smith*, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986) (finding that the juvenile defendant unambiguously invoked his right when he requested that his mom be brought to the station), *abrogated in part on other grounds by State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001). *But see State v. Oglesby*, 361 N.C. 550, 558-59, 648 S.E.2d 819, 824 (2007) (Timmons-Goodson, J., dissenting) (stating, in regards to a juvenile defendant's request to call his aunt, that "it is uncontested that . . . the juvenile's confession in this case would be inadmissible if the individual requested had fallen into the requisite category"). For the reasons stated more thoroughly below, however, juvenile defendants are provided greater protections than their adult counterparts, especially in regards to a juvenile's statutory right and protection to have a parent present.

present before questioning. *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355. In light of this unambiguous request, all questions should have immediately ceased until defendant's mother was present or defendant reinitiated the conversation. *See Edwards*, 451 U.S. at 484-85, 101 S. Ct. at 1885.

The cases discussed above only address a defendant's constitutional *Miranda* rights, not his statutory rights. In regard to a juvenile's statutory right to have a parent present, this Court has only addressed a juvenile's *unambiguous* invocation of the right. *See State v. Smith*, 317 N.C. 100, 343 S.E.2d 518 (1986), *abrogated in part on other grounds by State v. Buchanan*, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001). In *Smith* this Court stated that law enforcement officers must cease questioning when a juvenile unambiguously invokes his statutory right to have a parent present. *Id.* at 108, 343 S.E.2d at 522; *see State v. Branham*, 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002). This Court has not, however, "considered the implications of a juvenile's *ambiguous* reference" to his statutory right to have a parent present. *Saldierna*, ___ N.C. App. at ___, 775 S.E.2d at 333. The legislature intended to afford juveniles greater protection in subdivision (a)(3) than those afforded by a juvenile's constitutional *Miranda* rights codified in N.C.G.S. § 7B-2101(a)(1), (2), and (4). *See The Final Report of the Juvenile Code Revision Committee* 183 (Jan. 1979) (commenting that the Committee added "[subdivision] (3) . . . to assure that the juvenile may have his parent present during questioning if he desires and [stating that subdivision (3)] is an addition to case law requirements" found in N.C.G.S. § 7B-

2101(a)(1), (2), and (4)). Moreover, when viewed in its entirety, section 7B-2101 demonstrates our General Assembly's acknowledgement that juveniles are especially vulnerable when subjected to custodial interrogation. *See* N.C.G.S. § 7B-2101(b) (providing that, in essence, a juvenile under the age of sixteen cannot waive his right to have a parent or attorney present); *see also* Act of May 26, 2015, ch. 58, sec. 1.1, 2015 N.C. Sess. Laws 126, 126 (increasing the age of juveniles protected by subsection (b) from less than fourteen to less than sixteen years).

According to the majority, this Court's decision in *Smith*—applying the *Miranda* framework set forth in *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, to a juvenile's *unambiguous* invocation of his right to have a parent present—indicates that a juvenile's statutory right under subdivision (a)(3) can only be afforded as much protection as a juvenile's constitutional *Miranda* rights. As such, the majority concludes that the *Miranda* rules also apply to juveniles who make *ambiguous* statements regarding their right to have a parent present. I disagree. I agree with the Court of Appeals that by enacting N.C.G.S. § 7B-2101(a)(3), the legislature demonstrated its intent to afford a juvenile greater protection when attempting to invoke his or her right to have a parent present than when attempting to invoke his or her *Miranda* rights. *Saldierna*, ___ N.C. App. at ___, 775 S.E.2d at 333 ("[R]eview of the provisions of section 7B-2101 reveals an understanding by our General Assembly that the special right guaranteed by subsection (a)(3) is different from those rights discussed in *Miranda* and, in turn, reflects the legislature's intent that law

enforcement officers proceed with great caution in determining whether a juvenile is attempting to invoke this right.").

Although this Court has held that a "juvenile's right . . . to have a parent present during custodial interrogation[ ] is entitled to similar protection [as an adult's right to have an attorney present]," *Smith*, 317 N.C. at 106, 343 S.E.2d at 521, it does not follow that the protections afforded to juveniles under subdivision 7B-2101(a)(3) are capped at, and therefore cannot exceed, those provided under *Miranda*. As previously discussed, *Smith* involved a situation in which a juvenile defendant unambiguously requested that his mother be brought to the police station before he was questioned. *Id.* at 102, 343 S.E.2d at 519. This Court held that in such circumstances, the *Miranda* framework of *Davis* applied and required law enforcement officers to immediately cease questioning. *Id.* at 106-07, 343 S.E.2d at 521-22. This Court applied principles established under the Fifth and Sixth Amendments to the "resumption of custodial interrogation" under section 7B-2101.[6] *Id.* at 106, 343 S.E.2d at 521 (noting that the *Miranda* cases "are not controlling"). The "resumption of custodial interrogation" principles apply in the context of an unambiguous invocation of rights. *See Davis*, 512 U.S. at 459-61, 114 S. Ct. at 2355-56 (holding that law enforcement officers must cease questioning after an

---

[6] *Smith* discussed a juvenile's rights under to N.C.G.S. § 7A-595, which is the original codification of the rights afforded to juveniles in section 7B-2101. Section 7A-595 was repealed in 1999 and recodified as part of the Juvenile Code. *See* Act of Oct. 22, 1998, ch. 202, secs. 5, 6, 1997 N.C. Sess. Laws (Reg. Sess. 1998) 695, 742, 809. The two sections are substantively the same.

unambiguous invocation of the right to counsel and *cannot resume questioning* until counsel is present or the defendant reinitiates communication).  This Court did not address ambiguous statements, nor did it affirmatively hold that the protections afforded by subdivision (a)(3) are capped at those afforded to adults under *Miranda*. Therefore, I agree with the Court of Appeals' conclusion that the "case law regarding invocation of the *Miranda* rights guaranteed by the federal Constitution and codified in subsections 7B-2101(a)(1), (2), and (4) does *not* control our analysis of a juvenile's ambiguous statement possibly invoking the purely statutory right granted by our State's General Assembly in section 7B-2101(a)(3)."  *Saldierna*, ___ N.C. App. at ___, 775 S.E.2d at 332.

It is well established that juveniles differ from adults in significant ways and that these differences are especially relevant in the context of custodial interrogation. *See, e.g.*, *Thompson v. Oklahoma*, 487 U.S. 815, 835, 108 S. Ct. 2687, 2699 (1988) (plurality opinion) ("Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult."); *Gallegos v. Colorado*, 370 U.S. 49, 54, 82 S. Ct. 1209, 1212 (1962) (stating that juveniles are "not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and . . . [are] unable to know how to protect [their] own interests or *how to get the benefits of [their] constitutional rights*" (emphasis added)); *Haley v. Ohio*, 332 U.S. 596, 599-

600, 68 S. Ct. 302, 304 (1948) (plurality opinion) ("[W]e cannot believe that a lad of tender years is a match for the police in such a contest [as custodial interrogation]. . . . He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, crush him."). As discussed by the United States Supreme Court

> [a] child's age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception. Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself, including any police officer or judge.
>
> Time and again, this Court has drawn these commonsense conclusions for itself. We have observed that children generally are less mature and responsible than adults, that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them, that they are more vulnerable or susceptible to . . . outside pressures than adults, and so on. Addressing the specific context of police interrogation, we have observed that events that would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. Describing no one child in particular, these observations restate what any parent knows—indeed, what any person knows—about children generally.
>
> Our various statements to this effect are far from unique. The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them.

*J.D.B. v. North Carolina*, 564 U.S. 261, 272-73, 131 S. Ct. 2394, 2403 (2011) (citations and internal quotation marks omitted).

North Carolina courts have also acknowledged that "[j]uveniles are awarded

special consideration in light of their youth and limited life experience." *State v. Oglesby*, 361 N.C. 550, 557, 648 S.E.2d 819, 823 (2007) (Timmons-Goodson, J., dissenting) (citing *In re Stallings*, 318 N.C. 565, 576, 350 S.E.2d 327, 333 (1986) (Martin, J., dissenting)); *see In re K.D.L.*, 207 N.C. App. 453, 459, 700 S.E.2d 766, 771 (2010) ("[W]e cannot forget that police interrogation is inherently coercive—particularly for young people." (citations omitted)), *disc. rev. denied*, 365 N.C. 90, 706 S.E.2d 478 (2011). As discussed by Justice Harry C. Martin in his dissent to this Court's decision in *In re Stallings*, "Juveniles are not, after all miniature adults. Our criminal justice system recognizes that their immaturity and vulnerability sometimes warrant protections well beyond those afforded adults. It is primarily for that reason that a separate juvenile code with separate juvenile procedures exists." 318 N.C. at 576, 350 S.E.2d at 333 (Martin, J., dissenting). Justice H. Martin goes on to explain that the Juvenile Code demonstrates "legislative intent to provide broader protections to juveniles." *See id.* at 577, 350 S.E.2d at 333. Furthermore, "at least two empirical studies show that 'the vast majority of juveniles are simply incapable of understanding their *Miranda* rights and the meaning of waiving those rights.'" *Oglesby*, 361 N.C. at 559 n.3, 648 S.E.2d at 824 n.3 (citation omitted); *see* Cara A. Gardner, Recent Developments, *Failing to Serve and Protect: A Proposal for an Amendment to a Juvenile's Right to a Parent, Guardian, or Custodian During a Police Interrogation after* State v. Oglesby, 86 N.C. L. Rev. 1685, 1698-99 (2008) [hereinafter *Failing to Serve and Protect*] ("[R]esearch has revealed that only 20.9%

of juveniles understand the standard Miranda warnings . . . . [and] many d[o] not understand that [their right to an attorney means that] the attorney could actually be present during police questioning rather than at some later time. . . . This may indicate that juveniles in North Carolina also have difficulty understanding that they have the right to have a parent . . . present during an interrogation rather than at some later time." (footnotes omitted)). Therefore, it is reasonable to believe that juveniles should be afforded greater protections when seeking to have a parent present. *See Failing to Serve and Protect* at 1695 ("The reason a juvenile in a custodial interrogation has a right to the presence of a parent, guardian, or custodian is presumably so that the adult may assist in protecting the juvenile's rights.").

For these reasons, I would hold that when a juvenile makes an ambiguous statement relating to his or her statutory right to have a parent present during a custodial interrogation, law enforcement officers are required to ask clarifying questions to determine whether the juvenile desires to have his or her parent present before the juvenile answers any questions. Specifically, *Miranda* precedent is not binding on a juvenile's statutory rights under N.C.G.S. § 7B-2101(a)(3), and I believe that a juvenile can be afforded greater protection than that afforded under *Miranda* when attempting to invoke his or her statutory right. Additionally, as discussed above, juveniles are not able to fully understand the consequences of their actions and are more likely to submit to pressure. Most adults are nervous and apprehensive when stopped by a uniformed officer even in relatively trivial situations such as

routine traffic stops. Imagine then the apprehension, fear, and confusion of a teenager who finds himself under the power and authority of a law enforcement officer. Faced with this pressure, it stands to reason that many juveniles will be unable to unequivocally and unambiguously articulate their desire to have a parent present before police interrogation begins and will certainly lack the ability to appreciate the legal significance of this statutory protection. According to the majority, defendant "never gave any indication that he wanted to have [his mother] present for his interrogation, *nor did he condition his interview on first speaking with her*. Instead, defendant simply asked to call her." This standard expects far too much of the typical juvenile being held in police custody and does not comport with our legislature's intent to protect juveniles' rights.

I also disagree with the State's argument that requiring law enforcement officers to ask clarifying questions would place an unreasonable burden on them. The burden, if any, would be slight. In this case, Detective Kelly could have asked a simple question to clarify defendant's intent when he said, "Um, Can I call my mom?" or to ascertain his desire after he was unable to contact her, such as "Do you want your mother present before I ask you any questions?" Defendant's response of "no" would leave the detective free to continue the custodial interrogation, whereas the response of "yes" would be considered an unambiguous invocation of his right, and the interrogation must therefore immediately cease. Regardless, "the structure of the juvenile code" is "persuasive evidence . . . that the legislature intended to favor

juvenile protections *over law enforcement expediency.*"  *In re Stallings*, 318 N.C. at 576, 350 S.E.2d at 333 (emphasis added).  Thus, because the majority's holding fails to take into account the significant differences between juveniles and adults and improperly caps the protection of juveniles' statutory rights under section 7B-2101, I respectfully dissent.